UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

RICHARD CONVERSE and STEPHANIE
CONVERSE,

                                     Docket No. 5:21-cv-457

              Plaintiff,

           -against-

STATE FARM FIRE AND CASUALTY
COMPANY,

              Defendant.

--------------------------------------------------------X

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**

RIVKIN RADLER, LLP
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

By:    Michael P. Welch
        Henry Mascia

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT .........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..........................................3

      A.    The Parties and Policy ..........................................................3

      B.    Stephanie Converse Mails Letter to Joseph Pelton..............................4

      C.    The Loss and Claim ..........................................................5

      D.    State Farm Letter to Stephanie Converse, dated December 11, 2019...........................................................................5

      E.    Letter from State Farm's counsel, Roy Mura, to Stephanie Converse, dated January 2, 2020 ...........................................5

      F.    Plaintiffs' Claim and State Farm's Denial .............................6

      G.    The Pleadings, Removal, and Dismissal of Extra-contractual Claims ...........................................................................7

      H.    This Motion for Summary Judgment.....................................7

LEGAL STANDARD........................................................................8

LEGAL ANALYSIS........................................................................9

POINT I ........................................................................................9

      THERE IS NO COVERAGE UNDER THE POLICY BECAUSE MS. CONVERSE MADE MATERIAL MISREPRESENTATIONS  TO STATE FARM.............................9

      A.    General Legal Principles.....................................................9

      B.    Ms. Converse Violated the Fraud or Concealment Provision of the Policy ...................................................................11

POINT II ........................................................................................16

      MS. CONVERSE FAILED TO COOPERATE BY GIVING FALSE ANSWERS IN HER RECORDED STATEMENT AND FALSE TESTIMONY UNDER OATH.....................................16

A.      General Legal Principles...................................................................16

B.      Plaintiff Failed to Cooperate by Providing Numerous False
        Statements About Her Attempt to Burn Down the Property ...............17

POINT III.............................................................................................................19

        PLAINTIFF FAILED TO FURNISH A SWORN STATEMENT
        IN PROOF OF LOSS WITHIN 60 DAYS OF STATE FARM'S
        WRITTEN DEMAND .................................................................................19

A.      General Legal Principles...................................................................19

B.      Plaintiff Failed to Submit a Timely Proof of Loss..............................20

POINT IV.............................................................................................................22

        THE CLAIM BY RICHARD CONVERSE MUST BE
        DISMISSED BECAUSE HE LACKS INSURABLE INTEREST
        IN THE PROPERTY BEYOND THE AMOUNT STATE FARM
        PAID TO SATISFY THE MORTGAGE.......................................................22

A.      General Legal Principles...................................................................22

B.      The Insurable Interest of Plaintiff Richard Converse is Limited
        to His Liability on the Mortgage.........................................................23

CONCLUSION......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admiral Indem. Co. v. Bouley Int'l Holding, LLC*,
  No. 02-cv-9696 (HB), 2003 WL 22682273 (S.D.N.Y. Nov. 13, 2003) ...................................9

*Allstate Ins. Co. v. Longwell*,
  735 F. Supp. 1187 (S.D.N.Y. 1990)........................................................................................16

*Anthony Marino Const. Corp. v. INA Underwriters Ins. Co.*,
  69 N.Y.2d 798 (1987) ............................................................................................................19

*Azzato v. Allstate Ins. Co.*,
  99 A.D.3d 643 (2d Dep't 2012).................................................................................22, 23, 24

*Bailey v. Charter Oak Fire Ins. Co.*,
  273 A.D.2d 691 (3d Dep't 2000) ......................................................................................19, 20

*Claflin v. Commonwealth Ins. Co.*,
  110 U.S. 81 (1884).............................................................................................................10, 16

*Coleman v. New Amsterdam Cas. Co.*,
  247 N.Y. 271 (1928) .......................................................................................................14, 16, 18

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir.), *cert. denied*, 524 U.S. 911 (1998)......................................................8

*Dister v. Cont'l Group, Inc.*,
  859 F.2d 1108 (2d Cir. 1988)...............................................................................................8, 12

*Dyno-Bite, Inc. v. Travelers Companies*,
  80 A.D.2d 471 (4th Dep't 1981)........................................................................16, 17, 18, 19

*Eagley v. State Farm Ins. Co.*,
  No. 13-CV-6653P, 2015 WL 5714402 (W.D.N.Y. Sept. 29, 2015)............................9, 10, 15

*Elgi Holding, Inc. v. Insurance Co. of N. Am.*,
  511 F.2d 957 (2d Cir. 1975)...................................................................................................10

*Fine v. Bellefonte Underwriters Ins. Co.*,
  725 F.2d 179 (2d Cir. 1984)...............................................................................10, 11, 15, 18

*Fine v. Bellefonte Underwriters Ins. Co.*,
  758 F.2d 50 (2d Cir.), *cert. denied*, 474 U.S. 826 (1985)........................................................9

*Gov't Emp. Ins. Co. v. Fisher*,
    54 A.D.2d 1087 (4th Dep't 1976) ...................................................................16

*Greater New York Mut. Ins. Co. v. Utica First Ins. Co.*,
    172 A.D.3d 588 (1st Dep't 2019) ...........................................................15, 17

*Harary v. Allstate Ins. Co.*,
    988 F. Supp. 92 (E.D.N.Y. 1997), *aff'd*, 162 F.3d 1147 (2d Cir. 1998)
    .......................................................................................9, 10, 15, 16, 17

*Harris v. Allstate Ins. Co.*,
    83 F. Supp. 2d 423 (S.D.N.Y. 2000).............................................................8

*Igbara Realty Corp. v. New York Prop. Ins. Underwriting Assoc.*,
    63 N.Y.2d 201 (1984)...........................................................................20, 21

*Kaffalos, Inc. v. Excelsior Ins. Co.*,
    105 A.D.2d 957 (3d Dep't 1984) ...................................................................9

*King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co.*,
    433 F. Supp. 2d 256 (N.D.N.Y. 2006), *aff'd,* 314 F. App'x 342 (2d Cir. 2008) ....................19

*Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Ass'n*,
    53 N.Y.2d 835 (1981) ...................................................................................17

*Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Ass'n*,
    76 A.D.2d 759 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 835 (1981) .........................17, 19

*Litter v. Allstate Ins. Co.*,
    208 A.D.2d 602 (2d Dep't 1994) .................................................................19

*Maurice v. Allstate Ins. Co.*,
    173 A.D.2d 793 (2d Dep't 1991) .................................................................10

*Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co.*,
    No. 12-cv-6509 (CM), 2014 WL 406542 (S.D.N.Y. Jan. 30, 2014) .........................9

*Nat'l Filtering Oil Co. v. Citizens' Ins. Co.*,
    106 N.Y. 535 (1887) ...................................................................................22

*Nat'l Grange Mut. Ins. Co. v. Austin*,
    23 A.D.2d 776 (2d Dep't 1965) ...................................................................16

*Pedersen v. Farmington Cas. Co.*,
    No. 5:13-CV-171(GLS/ATB), 2015 WL 12767796 (N.D.N.Y. Oct. 19, 2015)...............20, 21

*Perfect Dental, PLLC v. Allstate Ins. Co.*,
    538 F. Supp. 2d 543 (E.D.N.Y. 2007) ..................................................8, 12

*Porter v. State Farm Fire & Cas. Co.*,
   No. 1:14-CV-00511, 2019 WL 2409549 (W.D.N.Y. June 7, 2019)................................22, 24

*Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*,
   598 F. Supp. 2d 274 .........................................................................9, 10, 11, 17, 18

*Scarola v. Insurance Co. of North America*,
   31 N.Y.2d 411 (1972) ...................................................................................22, 23

*Scott v. AIG Prop. Cas. Co.*,
   417 F. Supp. 3d 329 (S.D.N.Y. 2019)..................................................................9, 15

*Syd's Decorators, Inc. v. New York Property Insurance Underwriting Assn.*,
   97 A.D.2d 722 (1st Dep't 1983) *aff'd sub nom. Igbara Realty Corp. v. New
   York Prop. Ins. Underwriting Ass'n*, 63 N.Y.2d 201 (1984) ..........................................19, 21

*U.S. Fid. & Guar. Co. v. Von Bargen*,
   7 A.D.2d 872 (2d Dep't 1959), *aff'd*, 7 N.Y.2d 932 (1960) ...........................................17, 19

*Varda, Inc. v. Insurance Co. of N. Am.*,
   45 F.3d 634 (2d Cir. 1995).............................................................................9, 15

*Wagner v. Swarts*,
   827 F. Supp. 2d 85 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489
   F. App'x 500 (2d Cir. 2012) .............................................................................8

**Statutes and Other Authorities**

N.Y. Ins. L. § 3401 .....................................................................................22

N.Y. Ins. L. § 3407 .....................................................................................20

N.Y. Ins. L. § 3407(a) .................................................................................19

N.Y. Ins. L. § 3407(e) .............................................................................16, 20, 21

N.Y. Ins. L. § 3420(c)(1) ...............................................................................17

Fed. R. Civ. P. 56(a) ..................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)................................................................................7

Local Rule 56.1 .........................................................................................20

## PRELIMINARY STATEMENT

In this diversity action, Defendant State Farm Fire and Casualty Company ("State Farm") moves for summary judgment under Fed. R. Civ. P. 56(a), dismissing the complaint filed by Plaintiffs Stephanie Converse and Richard Converse.  Plaintiffs seek to recover monetary damages arising from an alleged breach of a homeowners' policy when State Farm denied their claim for a fire loss to an investment property.

Stephanie Converse lacks coverage for three reasons.  First, Ms. Converse made material misrepresentations to State Farm during the course of its investigation into the suspicious fire that damaged their property.  Three days after the fire, Ms. Converse told State Farm that she never asked anyone to burn down the Property, even though she sent Joseph Pelton a letter about a month earlier, offering him $5,000 to burn down the Property.  At the time of the misrepresentation – three days after the loss – any potential evidence of arson was material to State Farm's investigation as it was then proceeding.  State Farm confronted Ms. Converse about this false statement at her Examination Under Oath ("EUO"), yet she continued to mislead State Farm, claiming that she could not remember the contents of the letter because she was intoxicated when she wrote it.  This explanation was false, because between her recorded statement to State Farm and her EUO,  Ms. Converse admitted in a recorded statement to the Lee County Sheriff's office in Florida that she had sent Joe Pelton a letter asking him to burn down the Property.[1]

---

[1] After an investigation by the local authorities, the official cause of the fire was "undetermined," and no one was charged with arson or solicitation to commit arson.  State Farm, therefore, did not deny Ms. Converse's claim based on the policy exclusion for intentional acts.  Instead, her claim was denied based on, among other things, her continued willful misrepresentations concerning her multiple requests of Mr. Pelton to set fire to her home.

Further, it is our understanding that Mr. Pelton was determined to have an alibi at the time of the fire and was not involved in setting or procuring the fire. Nothing in this motion is intended to suggest that Mr. Pelton had anything to do with causing the fire. It appears as though Mr. Pelton was an unfortunate participant in Ms. Converse's attempt to commit insurance fraud prior to the fire.

1

Ms. Converse compounded this deception by attempting to prevent State Farm from discovering the conflict between her account of the Pelton letter she gave to the Lee County Sheriff's Office and the one she gave to State Farm by misrepresenting the questions posed to her by the Lee County Sherriff's Office.  Ms. Converse also misrepresented whether she spoke with Mr. Pelton after the loss, telling State Farm that she last spoke with Mr. Pelton before the fire while admitting to the Lee County Sherriff's Office that two times after the fire she spoke with Mr. Pelton over the phone.   Thus, Ms. Converse lacks coverage for this loss because her material misrepresentations violated the Fraud or Concealment provision of the insurance policy, and  thus State Farm properly denied her claim.

Second, Ms. Converse's material misrepresentations constituted a failure to cooperate with State Farm.  The failure to cooperate was a breach of the policy, warranting denial of Ms. Converse's claim and the dismissal of her complaint in its entirety.

Third, Ms. Converse lacks coverage because she failed to satisfy a condition precedent by failing to submit a Sworn Statement in Proof of Loss within 60 days of receiving State Farm's demand.  In New York, the failure to provide a timely Sworn Statement in Proof of Loss is an absolute defense to coverage.

The complaint, insofar as asserted by Ms. Converse's brother, Richard, must also be dismissed.  In New York, property insurance can be issued only to individuals with an insurable interest in the property.  Here, Richard Converse's claim was not denied because he did not violate any policy conditions.  However, Mr. Converse's only economic interest in the Property was his potential liability for the outstanding mortgage, which was extinguished when State Farm paid off the mortgage after the fire.  Mr. Converse admitted that he did not contribute any finances toward the purchase and never paid the mortgage, homeowner's insurance or property taxes; nor did he

maintain any personal property at the home.  Ms. Converse testified consistently, explaining that Mr. Converse was a nominal owner, listed only because she did not have the income to qualify for a mortgage on her own.  Ms. Converse admitted that Mr. Converse did not have "any economic interest" in the Property or expect a portion of the insurance proceeds.  Accordingly, the complaint must be dismissed as a matter of law in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and Policy

Plaintiffs Stephanie Converse and her brother, Richard Converse, purchased 442 Flower Avenue East, Watertown, New York ("the Property").  State Farm insured the Property under a homeowners policy (policy number 32-BS-T435-1), for the period of October 31, 2019 to October 31, 2020 ("the Policy Period"), which listed Stephanie J. Converse as the named insured and Richard Converse as an additional insured.  *See* Declaration of Julio Loarca ("Loarca Decl."), Ex. 1 at 2.  The Policy contains the following provisions:

### SECTION I – CONDITIONS

2.    **Your Duties After Loss.**  After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

e.   submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss that sets forth, to the best of **your** knowledge and belief:

1.   the time and cause of loss;

2.   interest of the **insured** and all others in the property involved and all encumbrances on the property;

3.   other insurance that may cover the loss;

4.   changes in title or occupancy of the property during the term of this policy;

5.   specifications of any damaged structure and detailed estimates for repair of the damage;

6.   an inventory of damaged or stolen personal property described in 2.c;

7.   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

8.   evidence or affidavit supporting a claim under **SECTION 1 – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

*See* Loarca Decl., Ex. 1 at 22-23 of Homeowners Policy.

### SECTION I AND SECTION II – CONDITIONS

2.   **Concealment or Fraud.**  We do not provide coverage for an insured who, whether before or after a loss has:

a.   intentionally concealed or misrepresented any material fact or circumstances; or

b.   engaged in fraudulent conduct;

relating to this insurance.

*See* Loarca Decl., Ex. 1 at 32 of Homeowners Policy.

### SECTION I – CONDITIONS

**Suit Against Us.**  No action will be brought unless there has been compliance with the policy provisions.  Any action by any party must be started within two years after the date of loss or damage.

*See* Loarca Decl., Ex. 1 at 24 of Homeowners Policy.

**B.    Stephanie Converse Mails Letter to Joseph Pelton**

On or about November 8, 2019, Stephanie Converse mailed Joseph Pelton a letter stating

the following:

"Joe,

How have you been? I miss you! Hope all is well and your (sic) doing good. Having issues with my house again. Need help this time! I will pay $5,000 cash when I get the insurance. The back door will be unlocked and open to the basement.

4

That's where the access to utilities are.  Tues and Wed (sic) are good during day. Make look like electrical.  I will come up after it happens so I will meet up with you. property (sic) is at 442 & 444 Flower Ave East.  It's a mint green house with garage.

Love you,

> See you soon.
> Stephanie."

*See* Loarca Decl., Ex. 4, at 1; *see also* Declaration of Michael P. Welch ("Welch Decl."), Ex. 4, Stephanie Converse Dep. Tr., at p. 71, ln 4-21; Oro Aff., Ex. A at p. 5, ln 8-20.  The envelope containing the letter was postmarked November 8, 2019.  *See* Loarca Decl., Ex. 4, at 2; Welch Decl., Ex. H at 78-79.

**C.      The Loss and Claim**

On December 8, 2019, Stephanie Converse reported a claim to State Farm for a loss caused by a fire that purportedly occurred at the Property that day.  *See* Loarca Decl., Ex. 2, at 45.   Ms. Converse was assigned claim number 52-03L1-48Z.  *See* Loarca Decl., Ex. 2, at 1.

**D.      State Farm Letter to Stephanie Converse, dated December 11, 2019**

By letter dated December 11, 2019, State Farm requested a "Sworn Statement in Proof of Loss" from Ms. Converse.   *See* Loarca Aff., Exhibit 5, at 1.  The letter enclosed a blank "Sworn Statement in Proof of Loss" form and a return envelope.  *Id.* at 3-4.  The letter made clear that the Sworn Statement in Proof of Loss form was "due by 2/17/2020" and "should be mailed to [State Farm] in the enclosed business reply envelope."  *Id.* at 1.

**E.      Letter from State Farm's counsel, Roy Mura, to Stephanie Converse,
          dated January 2, 2020**

By letter dated January 2, 2020, State Farm's counsel, Roy Mura, reminded Ms. Converse that she must return a completed Sworn Statement in Proof of Loss form as requested in State Farm's letter dated December 11, 2020.  *See* Loarca Decl., Ex. 6 at 1.  The letter quoted the Policy's

proof of loss requirement, which states "After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed:…submit to us, within 60 days after the loss, your signed, sworn proof of loss[.]" *Id.* at 2.  Mr. Mura's letter also scheduled an examination under oath (EUO) for January 9, 2020 and instructed Ms. Converse to provide certain documents, including the "Sworn Statement in Proof of Loss" sent on December 11, 2019.  *See id.* at 5.  The letter reserved State Farm's right to reschedule the EUO if Ms. Converse was unable to provide the requested documents by January 9, 2020.  *See id.*

State Farm further advised that "a failure…to timely complete and return the Sworn Statement in Proof of Loss form for the reported loss may result in the loss [of] your rights under the above-numbered insurance policy." *Id.*  State Farm made clear that it was not waiving any policy conditions or obligations of Ms. Converse by "scheduling and/or proceeding with your examination under oath and/or by requesting that you produce other documents and records to substantiate" the claim.  *Id.* at 6.  Ms. Converse did not submit the Sworn Statement in Proof of Loss by February 17, 2020.  *See* Welch Decl., Ex. F at p. 5, ln 14-23.  Ms. Converse provided State Farm with a Sworn Statement in Proof of Loss via email from her counsel on March 12, 2020 and at the start of her examination under oath ("EUO") on March 13, 2020.  *See* Welch Decl., Ex. F at p. 5, ln 17-19.

## F.    Plaintiffs' Claim and State Farm's Denial

After investigating the claim, State Farm denied Ms. Converse's claim for the fire loss. *See* Loarca Decl., Ex. 7.  State Farm explained that Ms. Converse breached three requirements of the policy.  First, she breached the "cooperation requirement" by giving false answers in her recorded statement and false EUO testimony.  *Id.* at 1.  Second, she breached the "sworn proof of loss" condition by submitting an untimely proof of loss.  *Id.*  Third, she breached the "concealment

or fraud" condition by making material misrepresentations in the presentation of her claim.  *Id.*
State Farm quoted the relevant portion of the policy.  *See id.* at 1-2.

**G.      The Pleadings, Removal, and Dismissal of Extra-contractual Claims**

In response, Stephanie Converse and Richard Converse started an action against State Farm
in New York State Supreme Court, Jefferson County.  *See* Welch Decl., Ex. A.  Plaintiffs asserted
causes of action for breach of contract, declaratory judgment, and breach of the covenant of good
faith and fair dealing.  *See id.* at 7-11.  The complaint annexed the following exhibits: (a) insurance
renewal, (b) Watertown Fire Department report, (c) State Farm's denial of claim letter, (d)
Complaint by Stephanie Converse to the New York Department of Financial Services, and (e)
Decision by the New York State Department of Financial Services in favor of State Farm.

In April 2021, State Farm removed the case to the United States District Court for the
Northern District of New York.  *See* Welch Decl., Exs. B-C.  State Farm moved under Rule
12(b)(6) to dismiss the claims for declaratory judgment, breach of the covenant of good faith and
fair dealing, as well as the requests for attorney's fees and punitive damages.  *See* Dkt # 8.  This
Court granted State Farm's Rule 12(b)(6) motion and dismissed the declaratory judgment and
breach of the covenant of good faith and fair dealing claim, along with the requests for attorney's
fees and punitive damages.  *See* Dkt # 24 (order), 25 (judgment).

State Farm then answered, denying the material allegations in the complaint and asserting
thirteen affirmative defenses.  *See* Welch Decl., Exs. D-E.

**H.      This Motion for Summary Judgment**

State Farm now moves for summary judgment dismissing the complaint in its entirety.  In
support, State Farm submits the Affidavit of Detective Jorge Oro, the Declaration of Julio Loarca,
the Declaration of Michael P. Welch, and their accompanying exhibits.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact." *Harris v. Allstate Ins. Co.*, 83 F. Supp. 2d 423, 428 (S.D.N.Y. 2000).

If the movant satisfies this burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted).

"[M]aterial disputes must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56." *Wagner*, 827 F. Supp. 2d at 92. "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, 524 U.S. 911 (1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 546 (E.D.N.Y. 2007).

## LEGAL ANALYSIS

## POINT I

## THERE IS NO COVERAGE UNDER THE POLICY BECAUSE MS. CONVERSE MADE MATERIAL MISREPRESENTATIONS TO STATE FARM

### A.    General Legal Principles

To establish a breach of an insurance policy based on "concealment, misrepresentation, or fraud by the insured ..., an insurer must show that the statements in question were (1) false, (2) willfully made, and (3) material to the insurer's investigation of the claim." *Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co.*, No. 12-cv-6509 (CM), 2014 WL 406542, at *1 (S.D.N.Y. Jan. 30, 2014) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir.), *cert. denied*, 474 U.S. 826 (1985)); *see Scott v. AIG Prop. Cas. Co.*, 417 F. Supp. 3d 329, 347 (S.D.N.Y. 2019).  When a policy does not cover an insured who "intentionally conceals or misrepresents a material fact concerning a claim under the policy, 'it is clear that good faith and fair dealing are the norms by which proofs of loss are to be measured.'" *Admiral Indem. Co. v. Bouley Int'l Holding, LLC*, No. 02-cv-9696 (HB), 2003 WL 22682273, at *4 (S.D.N.Y. Nov. 13, 2003) (quoting *Kaffalos, Inc. v. Excelsior Ins. Co.*, 105 A.D.2d 957, 958 (3d Dep't 1984)) (internal quotation marks and alterations omitted). "The insurer must prove fraud by clear and convincing evidence." *Id.* (quoting *Varda, Inc. v. Insurance Co. of N. Am.*, 45 F.3d 634, 639 (2d Cir. 1995)); *see Scott*, 417 F. Supp. 3d at 347.

"Materiality...is not 'determined by the *ultimate* importance of the information to the insurer but rather its relevance to the investigation at the time asked.'" *See Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*, 598 F. Supp. 2d 274, 277 (quoting *Harary v. Allstate Ins. Co.,* 988 F. Supp. 92, 104 (E.D.N.Y. 1997), *aff'd*, 162 F.3d 1147 (2d Cir. 1998)). "[T]he materiality

9

requirement is satisfied if the false statement [or demanded information] concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653P, 2015 WL 5714402, at *7 (W.D.N.Y. Sept. 29, 2015) (quoting *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (2d Cir. 1984)). Thus, false statements are material if they were "calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, *at that time*, a relevant or productive area to investigate." *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 184 (2d Cir. 1984) (emphasis added).

New York courts recognize "that direct proof of arson is seldom available and, therefore, [arson] can be established in civil cases by circumstantial evidence[.]" *Harary*, 988 F. Supp. at 101. Circumstantial evidence includes the "financial position of the insured[.]" *Id.*; *see also Elgi Holding, Inc. v. Insurance Co. of N. Am.,* 511 F.2d 957, 959 (2d Cir. 1975). Likewise, "information concerning an insured's credibility or motive is material where the insurer reasonably suspects arson or fraud in connection with the claim." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653P, 2015 WL 5714402, at *10 (W.D.N.Y. Sept. 29, 2015). For example, "where there were suspicious circumstances surrounding the burglary of the plaintiffs' home, the plaintiffs' possible motive in arranging the burglary renders their financial situation material and relevant." *Maurice v. Allstate Ins. Co.*, 173 A.D.2d 793, 794 (2d Dep't 1991). Thus, an insurer that "reasonably suspects arson has the right to obtain all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims." *Richie's Corner, Inc.*, 598 F. Supp. 2d at 276 (quoting *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94-95 (1884).

**B.**     **Ms. Converse Violated the Fraud or Concealment Provision of the Policy**

On December 11, 2019, three days after the fire, Ms. Converse told State Farm in a recorded statement that she never asked anyone to burn down the Property, despite having sent Joseph Pelton a letter in November 2019, offering him $5,000 to burn down the Property.  *See* Loarca Decl., Ex. 4, at 1; *see also* Welch Decl., Ex. H, at p. 71, ln 4-21; Oro Aff., Ex. A at p. 5, ln 8-20.  Ms. Converse was a played a portion of her recorded statement to Mr. Loarca at her EUO in this case and authenticated her voice on the recording. *See* Welch Decl., Ex. F, at p. 200-201.

A few weeks later, on January 2, 2020, Ms. Converse admitted in a recorded statement to detectives from the Lee County Sheriff's Office in Florida (who at the time were assisting the Watertown Police Department in New York) that she had asked Joseph Pelton to burn down the Property in exchange for $5,000, confirming that she had previously willfully misrepresented facts to discourage, mislead or deflect State Farm's investigation.  At the time of the misrepresentation – three days after the loss – any potential evidence of arson was material to State Farm's investigation as it was then proceeding.  *See Fine,* 725 F.2d at 184; *Richie's Corner*, 598 F. Supp. 2d at 276.

State Farm confronted Ms. Converse about this false statement at an EUO in March 2020, which was held after her recorded statement to the Florida detectives. Yet, at her EUO Ms. Converse continued to mislead State Farm, claiming that she could not remember the contents of the letter because she was intoxicated when she wrote it.  *See* Welch Decl., Ex. F at 202-204, 219.

This explanation was false.  Ms. Converse stated to Detectives Hill and Oro that before the fire she followed up on her letter and called Mr. Pelton on two occasions asking him to "do it," *i.e.*, intentionally set fire to her home.  Ms. Converse could not have followed up her letter with two  telephone calls urging Mr. Pelton to burn down her house if she was too intoxicated to

remember the contents of her letter.   In addition, on January 2, 2020 – a few short weeks after the

Loarca interview on December 11, 2019 – Ms. Converse admitted to Detectives Hill and Oro of

the Lee County Sheriff's office that she had asked Joe Pelton to burn down the Property.  *See* Oro

Aff., Ex. A at 4-5; *see also* Welch Decl., Ex. H, at p. 115, ln 2-10.   Detective Hill asked Ms.

Converse to "tell me about your story," and in response to this open-ended inquiry, Ms. Converse

answered:

> STEPHANIE CONVERSE:  Okay.  So, I had reached out to somebody and asked
> them to burn my house down.  And --
>
> DET. HILL:  Okay, who did you reach out to?
>
> STEPHANIE CONVERSE:  Joe Pelton."

*See* Oro Aff., Ex. A at 4-5; *see also* Welch Decl., Ex. H, at p. 115, ln 2-10.[2]  Thus, no rational juror

could credit Ms. Converse's testimony that in January 2020 she remembered the contents of her

letter to Joe Pelton, but could not remember the contents of that same letter a month earlier in

December 2019 during the interview with Loarca or two months later in March 2020 at the EUO.

*See Dister*, 859 F.2d at 1114; *Perfect Dental*, 538 F. Supp. 2d at 546.

     Ms. Converse compounded this deception by attempting to prevent State Farm from

discovering the conflict between the account of the Pelton letter she gave to the Lee County

Sheriff's Office and the one she gave to State Farm.  At her EUO, State Farm's counsel asked Ms.

Converse about her interview with the Lee County Sheriff's Office in the following colloquy:

> Q.      …The question is, was there any discussion on January 2nd when these two
> individuals from Lee County Sheriff's…Department came and seized your
> phone about that conspiracy to commit arson?

---

[2] The entirety of the Ms. Converse's statement to the Lee County Sheriff's Office is attached as a certified transcript to the Affidavit of Detective Oro.  *See* Oro Aff., Ex. A. Ms. Converse was played a portion of statement to the Lee County Sheriff's Office at her deposition and authenticated her voice on the recording.  *See* Welch Decl., Ex. H at 113.

A.       They had asked me about Larkin and asked if maybe I had asked her to do it.
                …

Q.       Did they ask about anybody else, whether you asked anybody else other than Larkin to do it, Traci or anyone else?

A.       They asked me if Traci did.

Q.       Whether you asked Traci?

A.       Yeah.

Q.       Anyone else?

A.       They had asked me if I knew a particular guy.

Q.       What does that mean, 'a particular guy'?

A.       They asked me, they go, Well, do you know this person, do you know that person? Like names. And I said yes.
                …

Q.       Did they tell you why they were asking about Joe Pelton?

A.       Just because Joe used to live with us and now Joe's back in New York.
                …

Q.       …Do you know why they were asking about Joe Pelton?

A.       Because I may have joked around with Joe a long time ago.

*See* Welch Decl., Ex. F at 205-207.

This false testimony conceals the contradictions between Ms. Converse's testimony to State Farm and her answers to the Lee County Sheriff's Office.  According to Ms. Converse's EUO testimony, the officers asked her about Joe Pelton because "Joes used to live with us and now Joe's back in New York" and because she "may have joked around with Joe a long time ago." *See* Welch Decl., Ex. F at 207.  But the transcript reveals that Detective Hill asked Ms. Converse

to tell her "story," and in response to that open-ended question Ms. Converse admitted to asking Mr. Pelton to burn down her house.  *See* Oro Aff., Ex. A at 5.

Ms. Converse may have been suggesting that the Pelton letter – the real reason for the Lee County Sheriff's Office's interrogation – was the "jok[ing] around" to which she referred in her EUO testimony.  *See* Welch Decl., Ex. F at 207.  But no rational juror could accept this suggestion because moments earlier she had testified that she was intoxicated at the time she wrote the Pelton letter and, therefore, could not even recall the contents.  *See id.* at 202-203, 219.  Ms. Converse continued to mislead State Farm at the EUO, testifying that the detectives from the Lee County Sheriff's office asked if she asked one of the tenants, Traci or Larkin, to set the fire, but the transcript does not contain any such questions.  *Compare* Oro Aff., Ex. A at 1-29 *with* Welch Decl., Ex. F at 205-206.

Ms. Converse also misrepresented to State Farm whether she spoke with Mr. Pelton after the loss.  At her EUO, Ms. Converse insisted that the last time she spoke directly to Joe Pelton was before the fire.  *See* Welch Decl., Ex. F. at 209, 227.  But she admitted to the Lee County Sheriff's office that "a couple weeks after" the fire she called Joe asking him to "do it," *i.e.*, intentionally set fire to her home (*see* Oro Aff., Ex. A at 10-11) and that she and Joe had a second phone call about three days later.  *See* Oro Aff., Ex. A at 10-11.  Through these numerous misrepresentations – which began three days after the loss and continued through her EUO – Ms. Converse failed to give State Farm "a fair and frank disclosure of information reasonably demanded … to enable [State Farm] to determine whether there is a genuine defense."  *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276 (1928).

State Farm had every reason to investigate whether the fire was accidental or intentional because that inquiry directly relates to State Farm's defenses.  *See* Loarca Decl., Ex. 1 at (14, 20

of 40) (providing that State Farm will cover an "accidental" loss but not an intentional loss). Although Mr. Pelton ultimately had an alibi and was never charged with arson, State Farm inquired about the Pelton letter a mere three days after the fire.  *See* Loarca Decl., Ex. 3 at 12-13.  Thus, the Pelton letter was "a subject relevant and germane to the insurer's investigation as *it was then proceeding*." *Eagley,* 2015 WL 5714402, at *7 (emphasis added).  The Pelton letter takes on greater significance in the context of this case because a fire insurance claimant who is suspected of arson has a significant burden of cooperation and  "direct proof of arson is seldom available and, therefore, [arson] can be established in civil cases by circumstantial evidence[.]" *Harary*, 988 F. Supp. at 101-102.  A letter soliciting arson a month before submitting a claim for a fire loss is at least as material to an insurer's investigation as what tools were used before a fire damaged property (*Greater New York Mut. Ins. Co. v. Utica First Ins. Co.*, 172 A.D.3d 588, 590 (1st Dep't 2019).  Thus, Ms. Converse's false statements were calculated "to discourage, mislead or deflect [State Farm]'s investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." *Fine,* 725 F.2d at 184.   Having misrepresented facts material to a fire loss investigation, Ms. Converse materially breached her contract with State Farm.  *See Varda*, 45 F.3d at 639; *Scott*, 417 F. Supp. 3d at 347.  For this reason alone, her complaint must be dismissed in its entirety.

The fact that Mr. Pelton ultimately had an alibi on the day of the fire does not change this analysis because Ms. Converse's false statement about the Pelton letter – made three days after the loss – concerned a topic relevant to State Farm's "investigation *as it was then proceeding*." *Eagley,* 2015 WL 5714402, at *7 (quoting *Fine*, 725 F.2d at 183 (emphasis added)).  Ms. Converse's misrepresentation was especially egregious in the context of a fire loss, where "direct proof of arson is seldom available and, therefore, [arson] can be established in civil cases by circumstantial

evidence[.]" *Harary*, 988 F. Supp. at 101.  Accordingly, Ms. Converse lacks coverage under the policy, and her complaint must be dismissed.

### POINT II

### MS. CONVERSE FAILED TO COOPERATE BY GIVING FALSE ANSWERS IN HER RECORDED STATEMENT AND FALSE TESTIMONY UNDER OATH

Ms. Converse's material misrepresentations also constituted a failure to cooperate with State Farm during its investigation of the loss.  The failure to cooperate also warrants denial of Ms. Converse's claim and the dismissal of her complaint in its entirety.

### A.   General Legal Principles

"A fire insurance policy is nothing more than a contract by the insurer to indemnify the insured against a property loss which it has sustained." *Dyno-Bite, Inc. v. Travelers Companies*, 80 A.D.2d 471, 473-75 (4th Dep't 1981); *see Allstate Ins. Co. v. Longwell*, 735 F. Supp. 1187, 1192 (S.D.N.Y. 1990).  Fire policies, like the one State Farm issued to Ms. Converse, require "the insured co-operate with the insurer in the investigation of the fire." *Dyno-Bite*, 80 A.D.2d at 473; *see* N.Y. Ins. L. § 3407(e).  An insurer, therefore, has a right to "'all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.'" *Dyno-Bite*, 80 A.D.2d at 473 (quoting *Claflin*, 110 U.S. at 94-95).

An insured cooperates by providing "a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." *Coleman,* 247 N.Y. at 276.  An insured fails to cooperate with an insurer by giving false statements about who was driving an insured vehicle at the time of an accident (*see Gov't Emp. Ins. Co. v. Fisher*, 54 A.D.2d 1087, 1087 (4th Dep't 1976)), how a motor vehicle accident occurred (*see Nat'l Grange*

*Mut. Ins. Co. v. Austin*, 23 A.D.2d 776, 777 (2d Dep't 1965)), or what tools were used before a fire damaged property (*Greater New York Mut. Ins. Co. v. Utica First Ins. Co.*, 172 A.D.3d 588, 590 (1st Dep't 2019)).

The insured's failure to cooperate is "a material breach of the contract and a defense to a suit on the policy." *Dyno-Bite*, 80 A.D.2d at 473; *see Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Ass'n*, 76 A.D.2d 759, 761 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 835 (1981); *U.S. Fid. & Guar. Co. v. Von Bargen*, 7 A.D.2d 872, 873 (2d Dep't 1959), *aff'd*, 7 N.Y.2d 932 (1960). The insurer bears the burden of proving that an insured breached a property insurance policy by failing to cooperate. *See* N.Y. Ins. L. § 3420(c)(1). *Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Ass'n*, 53 N.Y.2d 835, 837 (1981).

A fire insurance claimant who is suspected of arson has a significant burden of cooperation. *Harary*, 988 F. Supp. at 102. "In the context of suspected arson, New York courts have construed [the duty to cooperate] broadly, describing it as 'much broader than the right of discovery under the CPLR. By its terms the insured promises to render full and prompt assistance to discover the facts surrounding the loss and anything less results in a breach of contract.'" *Richie's Corner, Inc.*, 598 F. Supp. 2d at 276 (quoting *Dyno-Bite*, 80 A.D.2d at 474). In the context of a fire loss, any "inquiry concerning the insured's knowledge of the cause of the fire and possible arson is relevant and material since arson excuses payment under the policy. *Dyno-Bite*, 80 A.D.2d at 473-74.

**B.      Plaintiff Failed to Cooperate by Providing Numerous False Statements About Her Attempt to Burn Down the Property**

State Farm interviewed Ms. Converse three days after the loss and asked her simple, direct questions about whether she had ever asked anyone to burn down the Property. *See* Loarca Decl., Ex. 3 at 12-13. At the time of the misrepresentation – three days after the loss – any potential

evidence of arson was material to State Farm's investigation.  *See Richie's Corner*, 598 F. Supp. 2d at 276; *Dyno-Bite*, 80 A.D.2d at 474.

Although Ms. Converse denied ever asking someone to burn down the Property, Mr. Loarca rephrased the question several times, giving Ms. Converse multiple opportunities to provide "a fair and frank disclosure of information" State Farm needed "to determine whether there is a genuine defense." *Coleman*, 247 N.Y. at 276.

Ms. Converse used each opportunity to obstruct State Farm's investigation.  At the initial interview, Ms. Converse denied ever asking anyone to burn down her property (*see* Loarca Decl., Ex. 2, at 12-13).  State Farm confronted Ms. Converse about this false statement at an EUO in March 2020, yet Ms. Converse continued to mislead State Farm, claiming that she could not remember the contents of the letter because she was intoxicated when she wrote it.  *See* Welch Decl., Ex. F at 202-204, 219.  This statement was false, as demonstrated by her statement to the Lee County Sheriff's Office a month earlier.  *See* Oro Aff., Ex. A at 4-5; *see also* Welch Decl., Ex. H, at p. 115, ln 2-10.

Ms. Converse compounded this deception by attempting to prevent State Farm from discovering the conflict between the account of the Pelton letter she gave to the Lee County Sheriff's Office and the one she gave to State Farm.  Ms. Converse also misrepresented to State Farm whether she spoke with Mr. Pelton after the loss.

Thus, instead of giving State Farm "a fair and frank disclosure of information reasonably demanded … to enable [State Farm] to determine whether there is a genuine defense" (*Coleman*, 247 N.Y. at 276), Ms. Converse gave false statements calculated "to discourage, mislead or deflect [State Farm]'s investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." *Fine,* 725 F.2d at 184.  Having failed to cooperate with inquiries

into the Pelton letter – a material topic in the context of a fire loss – Ms. Converse materially breached her contract with State Farm. *Dyno-Bite*, 80 A.D.2d at 473; *see Lentini Bros.*, 76 A.D.2d at 761; *Von Bargen*, 7 A.D.2d at 873. For this reason alone, her complaint must be dismissed in its entirety.

**POINT III**

**PLAINTIFF FAILED TO FURNISH A SWORN STATEMENT IN PROOF OF LOSS WITHIN 60 DAYS OF STATE FARM'S WRITTEN DEMAND**

**A.     General Legal Principles**

Under New York law, an insurer can require a sworn statement in proof of loss as a condition precedent to coverage, but "the failure to produce proof of loss will not invalidate the claim unless the insurer gives a written notice and a blank form" and the insured fails to furnish proof of loss within 60 days of the insurer's demand. *King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co.*, 433 F. Supp. 2d 256, 262 (N.D.N.Y. 2006), *aff'd,* 314 F. App'x 342 (2d Cir. 2008); *see* N.Y. Ins. L. § 3407(a). An unsworn statement does not satisfy "the contractual or statutory requirement to serve defendants with sworn proofs of loss." *Bailey v. Charter Oak Fire Ins. Co.*, 273 A.D.2d 691, 693 (3d Dep't 2000); *see also Litter v. Allstate Ins. Co.,* 208 A.D.2d 602, 603 (2d Dep't 1994). The insurer does not need to inform the insured that proof of loss is due within 60 days (*see Anthony Marino Const. Corp. v. INA Underwriters Ins. Co.,* 69 N.Y.2d 798, 800 (1987)) or that the failure to provide timely proof of loss could result in the denial of claim (*see Syd's Decorators, Inc. v. New York Property Insurance Underwriting Assn.*, 97 A.D.2d 722, 723-724 (1st Dep't 1983) *aff'd sub nom. Igbara Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 63 N.Y.2d 201, 217 (1984).

The insured's failure to provide the Sworn Statement in Proof of Loss under Section 3407 of the New York Insurance Law is "an absolute defense to an insured's claim, 'absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense.'" *Pedersen v. Farmington Cas. Co.*, No. 5:13-CV-171(GLS/ATB), 2015 WL 12767796, at *2 (N.D.N.Y. Oct. 19, 2015) (citing *Igbara Realty Corp. v. New York Prop. Ins. Underwriting Assoc.*, 63 N.Y.2d 201, 209-10 (1984)).

**B.      Plaintiff Failed to Submit a Timely Proof of Loss**

Here, the failure of Ms. Converse to submit a timely proof of loss is "an absolute defense to [her] claim" under the policy, requiring dismissal of her complaint. *See Pedersen*, 2015 WL 12767796 at *2. State Farm demanded the Sworn Statement in Proof of Loss by a letter (*see* Loarca Decl., Ex. 5), which Plaintiff received on December 17, 2019 (*see* Loarca Decl., Ex. at 2; Welch Decl., Ex. F at 184; Rule 56.1 Statement at ¶14). State Farm's letter made clear that the proof of loss was due by February 17, 2020 (*see* Loarca Decl., Ex 5 at 1). Yet Ms. Converse did not return the Sworn Statement in Proof of Loss until March 12, 2020. *See* Welch Decl., Ex. F at p. 5, ln 17-19; *see* LR 56.1 Statement at ¶ 27.

State Farm did not waive its late proof of loss defense, and no grounds for estoppel exist. Indeed, State Farm exceeded its obligations under New York law. For example, State Farm gave Ms. Converse 62 days (from December 17, 2019 to February 17, 2020) to provide the Sworn Statement in Proof of Loss, even though New York law requires only 60 days. *See* Loarca Decl., Ex 5 at 1; *see also* N.Y. Ins. L. § 3407(e). State Farm also identified the exact due date for the proof of loss in its initial demand (*see* Loarca Decl., Ex 5 at 1), even though New York Law does not require an insurer "to state…that the sworn proof of loss was required to be filed within 60 days[.]" *See Bailey*, 273 A.D.2d at 692. State Farm then sent Ms. Converse a letter, dated January 2, 2020, reminding her to return the Sworn Statement in Proof of Loss, even though such a

reminder is not required by the policy or New York law.  *See*  Loarca Decl., Ex. 6; *see also* N.Y. Ins. L. § 3407(e).

In this January 2, 2020 letter, State Farm also explained the consequences of failing to provide the Sworn Statement in Proof of Loss, warning that "a failure…to timely complete and return the Sworn Statement in Proof of Loss form for the reported loss may result in the loss [of] your rights under the above-numbered insurance policy."  See Loarca Decl., Ex. 6 at 5.  Neither the policy nor New York law require State Farm to explain the consequences of the failure to provide timely proof of loss, yet State Farm did so anyway.  *See Syd's Decorators*, 97 A.D.2d at 723-724 *aff'd sub nom. Igbara*, 63 N.Y.2d at 217.  To avoid any confusion that may have arisen from the fact that the January 2, 2020 also rescheduled an examination under oath, State Farm confirmed that it was not waiving any policy conditions or obligations of Ms. Converse by "scheduling and/or proceeding with [her] examination under oath and/or by requesting that [she] produce other documents and records to substantiate" the claim. *Id.* at 6.

Ms. Converse did not provide the Sworn Statement in Proof of Loss by February 17, 2020 or even request an extension. *See* Welch Decl., Ex. F., at 186.  Ms. Converse's failure to provide timely the Sworn Statement in Proof of Loss is "an absolute defense" to her claim against State Farm. *Pedersen v. Farmington Cas. Co.*, No. 5:13-CV-171(GLS/ATB), 2015 WL 12767796, at *2 (N.D.N.Y. Oct. 19, 2015) (citing *Igbara*, 63 N.Y.2d at 209-10).   For this reason alone, the Court must dismiss the complaint insofar as asserted by Ms. Converse in its entirety.

<u>**POINT IV**</u>

**THE CLAIM BY RICHARD CONVERSE MUST BE DISMISSED BECAUSE HE LACKS INSURABLE INTEREST IN THE PROPERTY BEYOND THE AMOUNT STATE FARM PAID <u>TO SATISFY THE MORTGAGE</u>**

The complaint, insofar as asserted by Richard Converse, must also be dismissed, but for different reasons.

**A.      General Legal Principles**

In New York, a property insurance policy cannot be enforced by anyone who lacks an "insurable interest in the property insured."  N.Y. Ins. L. § 3401.  The purpose of this provision is to "prevent fraud and crime and to prohibit wagering contracts on property in which the insured does not possess an interest."  *Azzato v. Allstate Ins. Co.*, 99 A.D.3d 643, 648 (2d Dep't 2012).

An "insurable interest" exists when he or she "will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *Id.* at 648-49 (internal quotation marks and citations omitted); *see Scarola v. Insurance Co. of North America*, 31 N.Y.2d 411, 413 (1972). Legal or equitable interest in the property is not necessary (*see Nat'l Filtering Oil Co. v. Citizens' Ins. Co.*, 106 N.Y. 535, 541 (1887)) or sufficient to establish an insurable interest (*see Porter v. State Farm Fire & Cas. Co.,* No. 1:14-CV-00511, 2019 WL 2409549, at *3 (W.D.N.Y. June 7, 2019)).  As the Court of Appeals has explained, "[a]n 'insurable interest' is sui generis, and peculiar in its texture and operation.  *Scarola*, 31 N.Y.2d at 413 (internal quotation marks and citations omitted).

**B.      The Insurable Interest of Plaintiff Richard Converse is Limited
to His Liability on the Mortgage**

Here, Richard Converse's only economic interest in the Property was his potential liability
for the outstanding mortgage, which was extinguished when State Farm paid off the mortgage.
*See* Welch Decl., Ex. G at 27; *see also* Loarca Decl. ¶21; Loarca Decl., Ex. 2 at 12.  Mr. Converse
admitted that he did not contribute any finances toward the purchase of the Property and never
received any rental income from the Property or reported rental income on his tax returns.  *See*
Welch Decl., Ex. G at 21, 27, 34, 39.  He explained that Ms. Converse was responsible to collect
rent from the tenants and pay the mortgage, homeowners' insurance, and property taxes.  *Id.* at 32-
33, 36.

Ms. Converse confirmed these facts, testifying that she always paid the mortgage, utilities,
taxes, and insurance. *See* Welch Decl., Ex. H at 3-4, 23, 32, 35-36.  Mr. Converse did not make
any mortgage payments, contribute to the purchase price, or pay for any property insurance.  *See*
Welch Decl., Ex. H at 155.  Ms. Converse included the income generated by the property on her
taxes.  *See* Welch Decl., Ex. H at 40.  As a result, Ms. Converse testified that Mr. Converse did
not have "any economic interest" in the Property.  *See id.* at 155-156.  Ms. Converse explained
that Mr. Converse co-signed for the mortgage on the Property because Ms. Converse would not
have qualified on her own.  *See id.* at 154-155.

As a result of this arrangement, Ms. Converse confirmed that Richard did not expect to
receive any of the insurance proceeds.  *See id.* at 155-156.  Thus, Mr. Converse did not derive any
"pecuniary benefit or advantage" from the preservation of the Property, and now that the mortgage
has been satisfied, he did not suffer any "pecuniary loss or damages from its destruction."  *See*
*Azzato*, 99 A.D.3d at 648-49; *Scarola*, 31 N.Y.2d at 413.

The facts here are similar to those in *Porter v. State Farm Fire & Cas. Co.*, No. 1:14-CV-00511, 2019 WL 2409549, at *2 (W.D.N.Y. June 7, 2019).  In *Porter*, a nominal owner started an action seeking coverage under a property insurance policy.  *Id.* at *1.  The district court held that the plaintiff lacked an insurable interest in the subject property because she had purchased it "as an accommodation" to another person, Mr. Spencer (*id.* at 2), just as Mr. Converse did for his sister, Ms. Converse, who admittedly did not have the income necessary to qualify for a mortgage.  *See* Welch Decl., Ex. H at 154-155.  The plaintiff in *Porter*, like Mr. Converse here, did not manage or pay for the property.  *See Porter*, 2019 WL 2409549, at *2; Welch Decl., Ex. G at 21, 27, 32-34, 36, 39.  The plaintiff in *Porter*, also like Mr. Converse here, did not "receive any economic benefit from the property."  *See Porter*, 2019 WL 2409549, at *2; Welch Decl., Ex. G at 21, 27, 34, 39.  Thus, Mr. Converse's insurable interest consisted of his potential liability for the mortgage payments, but State Farm extinguished that liability by paying off the mortgage.  *See* Welch Decl., Ex. G at 27; *see also* Loarca Decl. ¶21; Loarca Decl., Ex. 2 at 12.

If the court were to find Mr. Converse has an insurable interest beyond the amount of his mortgage obligation, the insurance policy would be converted into a wagering contract giving Mr. Converse a windfall even though Ms. Converse assumed financial responsibility for the Property.  *See Porter*, 2019 WL 2409549 at *2; *see also Azzato*, 99 A.D.3d at 648.  Accordingly, the complaint, insofar as asserted by Mr. Converse, must be dismissed in its entirety.

## <u>CONCLUSION</u>

WHEREFORE, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:  Uniondale, New York
        November 11, 2022

                                        RIVKIN RADLER, LLP
                                        Attorneys for Defendant


                                        *Michael P. Welch*
                                        _____
                                        Michael P. Welch
                                        Henry Mascia
                                        926 RXR Plaza
                                        Uniondale, New York 11556-0926
                                        (516) 357-3000
                                        RR File No.: 10660-70006