UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

RICHARD CONVERSE and STEPHANIE
CONVERSE,

                                Docket No. 5:21-cv-457

              Plaintiff,

        -against-

STATE FARM FIRE AND CASUALTY
COMPANY,

              Defendant.

--------------------------------------------------------X


### STATE FARM'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT


                                RIVKIN RADLER, LLP
                                926 RXR Plaza
                                Uniondale, New York 11556-0926
                                (516) 357-3000


By:    Michael P. Welch

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 5

    A.    The Parties and Policy ................................................................................ 5

    B.    Stephanie Converse Mails Letter to Joseph Pelton ................................... 6

    C.    The Loss, Claim and State Farm's Investigation ....................................... 7

    D.    State Farm's Response to Interrogatories .................................................. 8

LEGAL ANALYSIS ................................................................................................... 8

    A.    State Farm's First, Second, Third, Seventh, Eighth and Ninth Affirmative Defenses Are Not Subject to Dismissal ............................................................. 8

    B.    State Farm's Sixth Affirmative Defense Is Not Subject to Dismissal Because Richard Converse's Insurable Interest Was Satisfied ............................. 20

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azzato v. Allstate Ins. Co.*,
  99 A.D.3d 643 (2d Dep't 2012) ..................................................................21

*Citizens Sav. and Loan Ass'n of New York v. Proprietors Ins. Co.*
  78 A.D.2d 377 (2d Dep't 1981) ..................................................................21

*Coleman v. New Amsterdam Cas. Co.*,
  247 N.Y. 271 (1928) ..................................................................................16

*Eagley v. State Farm Ins. Co.*,
  No. 13-CV-6653P, 2015 WL 5714402 (W.D.N.Y. Sept. 29, 2015) ....................9, 18

*Etterle v. Excelsior Ins. Co. of New York*,
  74 A.D.2d 436 (4th Dep't 1980) ................................................................21

*Fine v. Bellefonte Underwriters Ins. Co.*,
  725 F.2d 179 (2d Cir. 1984) ............................................................9, 16, 18

*Cimato v. State Farm Fire & Cas. Co.*,
  2020 U.S. Dist. LEXIS 115934 (W.D.N.Y. June 29, 2020) ..................................17

*Greater New York Mut. Ins. Co. v. Utica First Ins. Co.*,
  172 A.D.3d 588 (1st Dep't 2019) ...............................................................16

*Harary v. Allstate Ins. Co.*,
  988 F. Supp. 93 (E.D.N.Y. 1997), *aff'd*, 162 F.3d 1147 (2d Cir. 1998) ...............9, 16,18

*Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co.*,
  No. 12-cv-6509 (CM), 2014 WL 406542 (S.D.N.Y. Jan. 30, 2014) ........................9

*Nipkow & Kobelt, Inc. Parliament Textile Div. v. North River Ins. Co.*,
  673 F. Supp. 1185 (S.D.N.Y. 1987) ............................................................19

*Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*,
  598 F. Supp. 2d 274 (E.D.N.Y. 2008) ...........................................................9

*Rickert v. Travelers Ins. Co.*,
  159 A.D.2d 758 (3d Dep't 1990) ................................................................17

*Scott v. AIG Prop. Cas. Co.*,
  417 F. Supp. 3d 329 (S.D.N.Y. 2019) ...............................................9, 15, 16, 18, 19

*Stainless, Inc. v. Employers Fire Ins. Co.*
    69 A.D.2d 27 (1st Dep't 1979), *aff'd*, 49 N.Y.2d 924 (1980) .................................................21

*Sunbright Fashions, Inc. v. Greater New York Mut. Ins. Co.*,
    34 A.D.2d 235 (1st Dep't 1970), *aff'd* 28 N.Y.2d 563 (1971) .................................................19

*Varda, Inc. v. Insurance Co. of N. Am.*,
    45 F.3d 634 (2d Cir. 1995)......................................................................................9, 16

**Statutes and Other Authorities**

Insurance Law § 3401 ....................................................................................................21

## <u>PRELIMINARY STATEMENT</u>

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment seeking to dismiss the First, Second, Third, Sixth, Seventh, Eighth, and Ninth affirmative defenses asserted in State Farm's Amended Answer.[1]

Plaintiffs' motion seeking dismissal of State Farm's affirmative defenses is premised on the alleged absence of evidence in the record to support them. As demonstrated herein, however, State Farm's affirmative defenses are amply supported by the record evidence.[2] State Farm has separately moved for summary judgment to dismiss Plaintiff's Complaint in its entirety. However, if State Farm's motion is not granted, State Farm should be permitted to argue each and every affirmative defense asserted in its Amended Complaint, except for its Fifth and Tenth which are hereby withdrawn.

Plaintiff Stephanie Converse's inability to simply tell the truth or take any responsibility for her conduct in this case is shocking. Unable to continue to hide from her actions, however, Ms. Converse now finally admits that she sent her friend, Joseph Pelton, a letter on or about November 8, 2019 asking him to set fire to her property in New York ("November 8th letter"). On December 8, 2019, Plaintiffs' rental property in New York sustained a fire loss. Ms. Converse will likely call this a coincidence.

---

[1] Plaintiffs are not seeking dismissal of State Farm's Fourth Affirmative Defense. State Farm hereby withdraws its Fifth (failure to mitigate) and Tenth (reservation of defenses) Affirmative Defenses.

[2] State Farm has separately moved for summary judgment seeking dismissal of Plaintiffs' Complaint in its entirety. *See* ECF Doc. No. 38.  Plaintiffs did not cross-move but rather filed a stand-alone motion for summary judgment. *See* ECF Doc. No. 39. As a result, while duplicative, State Farm's opposition annexes and/or references for completeness sake and to preserve the record the same evidence submitted in support of its affirmative motion for summary judgment (ECF Doc. No. 38-1 – 27).

On December 11, 2019, three days after the fire, which was being investigated as a potential arson based on the existence of the November 8th letter, State Farm Claim Specialist Julio Loarca asked Ms. Converse in a recorded statement if she requested anyone to burn down her property or sent anyone a writing requesting that they do so. Ms. Converse lied to Mr. Loarca and denied asking anyone to set fire to her property. Now, in support of Plaintiffs' motion for partial summary judgment, Ms. Converse argues that her lie was immaterial because Mr. Loarca was already in possession of the letter at the time she gave her statement to him and thus did not alter State Farm's investigation. Lying about known information, however, is still lying.  But regardless, at the time Mr. Loarca was asking her the questions – and entitled to completely truthful responses – the fire was actively being investigated as an arson by both State Farm and the local authorities based on the existence of that very letter. The existence and content of the letter was clearly material to State Farm's claim investigation as *it was then proceeding*.

Moreover, on January 2, 2020, three weeks after her recorded interview to Mr. Loarca, Ms. Converse gave a recorded interview to detectives in Florida (where she resides) who were assisting New York law enforcement with an investigation into the circumstances of the fire. In her January 2020 recorded statement, Ms. Converse not only admitted to sending Mr. Pelton the November 8th letter and asking him to set the fire in exchange for $5,000 in insurance proceeds, but she also admitted that after she learned of the fire, she called Mr. Pelton asking if he had actually gone through with it.  Thus, on December 11, 2019, when Mr. Loarca asked Ms. Converse the questions about the letter – and if she had requested someone to set her property on fire, which she lied about – she was *unaware* whether Mr. Pelton had actually gone through with it or not. Thus, Ms. Converse's  knowledge of potential suspects, including the person she implored to do it, was

obviously material to State Farm's investigation as it was then proceeding. Ms. Converse was clearly attempting to conceal her involvement, as well as Mr. Pelton's.

Ms. Converse's lies continued. At her Examination Under Oath ("EUO") conducted on March 13, 2020 (a mere two months after her statement to Florida detectives), Ms. Converse testified, among other things, that she didn't recall writing the letter to Mr. Pelton or its contents because she was intoxicated when she wrote it. But, Ms. Converse admitted to the Florida detectives that she called Mr. Pelton *twice before the fire* imploring him to "do it" *i.e.*, to intentionally set fire to her property by making it look like an electrical accident (a property that was *occupied* at the time by multiple tenants, a child, and their pets).[3] Ms. Converse could not have followed up her November 8th letter with two separate telephone calls to Mr. Pelton prior to the fire urging him to do it if she was too intoxicated to even remember the contents of the letter in the first place. Simply, if she was too drunk to remember writing it, she would have had no need to make the follow-up phone calls. Ms. Converse concocted her "too drunk to remember" story at her EUO to attempt to explain the irrefutable fact that she sent the letter and lied about its contents. And, Ms. Converse never told the Florida detectives that she could not recall the contents of the letter because she was intoxicated when she wrote it – she saved that lie for her EUO. Lying, and then creating new lies to explain the first ones, is evidence of Ms. Converse's fraudulent intent as a matter of law.

---

[3] During her statement to the Florida detectives, the following exchange ensued:

> Det. Hill: Did you warn any of these tenants to leave the house or they might get killed?

> Stephanie Converse: I didn't know it was going to happen that, *at that time*.

ECF. Doc. No. 38-15, p. 13 (emphasis added). Apparently, prior to the fire, Ms. Converse never called Mr. Pelton and requested that he *not* go through with it. This exchange apparently reveals that Ms. Converse was not surprised by the fire that the fire had occurred, just that it had happened "at that time."  Ms. Converse, apparently, had a different timetable in mind.

Additionally, contrary to Plaintiffs' argument in their memorandum of law, and as more fully detailed below, it is not an "undisputed fact … that Stephanie Converse did not commit arson." *See* Pltf. MOL [Doc. 39-5], p. 5 of 17. As more fully detailed below, arson has <u>never</u> been ruled out as the cause of the fire. In fact, to this day, the cause of the fire remains "undetermined" by the Fire Marshal. Thus, all of Ms. Converse's statements to State Farm during her recorded statement, in connection with her EUO, and at her Examination Before Trial were and remain material.[4]

Ms. Converse also argues that she was not attempting to commit insurance fraud when she wrote the letter and lied about it to Mr. Loarca and at during EUO. This is demonstrably false.  Ms. Converse promised Mr. Pelton $5,000 out of the insurance proceeds if he set her house on fire. Ms. Converse wrote in the letter, "I will come up after it happens so I will meet up with you [for the payment of the $5,000]." In fact, prior to the fire she had made travel arrangements to be in New York in February 2020. Like the fire itself, Ms. Converse will call her travel arrangements another coincidence. It is simply another lie.[5]

Ms. Converse wants this court to reward her for allegedly not committing arson or actually paying Mr. Pelton (or someone else) to burn down her house. But this is not the standard.  Ms. Converse intentionally made material misrepresentations, which were meant to impede and misdirect State Farm's investigation as it was then proceeding. She cannot collect insurance proceeds based on her willful and repeated violations of the policy's concealment or fraud provision, which State Farm has proven by clear and convincing evidence.  Except for the Sixth

---

[4] It is, however, true that because the fire was not definitively ruled to have been intentionally set, State Farm did not deny Ms. Converse's claim based on her policy's intentional acts exclusion *i.e.*, arson.  Her claim was denied based, in part, on her repeated violations of the concealment or fraud provision.

[5] Perhaps also another coincidence is the fact that Ms. Converse borrowed $5,000 from her brother, Richard Converse, prior to November 2019, which is the exact same amount she offered to pay Mr. Pelton in the November 8th letter.

affirmative defense, State Farm's remaining affirmative defenses are predicated on the foregoing conduct and evidence.

As to Plaintiff Richard Converse, at a minimum, he admitted maintaining no contents at the property, nor did he have any financial interest in the purchase, maintenance, or rental income generated by the property. While he was the deeded owner, which gave him an insurable interest in its physical structure, his interest was fully satisfied when State Farm paid the full outstanding mortgage balance to the mortgagee under the terms and conditions of the policy's mortgage clause. Mr. Converse had no other insurable interest other than his financial interest in the physical structure of the building, which was paid. Accordingly, the Sixth affirmative defense  should not be dismissed with State Farm permitted to present this defense at trial.

Accordingly, Plaintiffs' motion for partial summary judgment must be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and Policy

Plaintiffs Stephanie Converse and her brother, Richard Converse, purchased 442 Flower Avenue East, Watertown, New York ("the Property"). *See* Pltf. SOMF, at ¶ 1, Ex. 1. State Farm insured the Property under a homeowners policy (policy number 32-BS-T435-1), for the period of October 31, 2019 to October 31, 2020 ("the Policy Period"), which policy listed Stephanie J. Converse as the named insured and Richard Converse as an additional insured. *See* ECF Doc. No. 38-17, at 4 of 52 (State Farm Policy annexed to Declaration of Julio Loarca as Ex. 1).[6]  The Policy contains the following relevant provisions:

---

[6] In support of State Farm's motion for summary judgment, State Farm submitted a Declaration from Julio Loarca, with exhibits, a Declaration from Michael P. Welch, Esq., with exhibits, an Affidavit from Detective Jorge Oro, with exhibit, and a Rule 56.1 Statement of Material Facts. *See* ECF Doc. No. 38-1 – 27.  For the sake of judicial economy, State Farm incorporates and references those documents and exhibits in opposition to Plaintiffs' motion for partial summary judgment.

**SECTION I AND SECTION II – CONDITIONS**

2. **Concealment or Fraud.** We do not provide coverage for an insured who, whether before or after a loss has:

  a. intentionally concealed or misrepresented any material fact or circumstances; or

  b. engaged in fraudulent conduct;

relating to this insurance.

*See* ECF Doc. No. 38-17, at 47 of 52.

**B. Stephanie Converse Mails Letter to Joseph Pelton**

On or about November 8, 2019, Stephanie Converse mailed Joseph Pelton a letter stating the following:

> "Joe,
>
> How have you been? I miss you! Hope all is well and your (sic) doing good. Having issues with my house again. Need help this time! I will pay $5,000 cash when I get the insurance. The back door will be unlocked and open to the basement. That's where the access to utilities are. Tues and Wed (sic) are good during day. Make look like electrical. I will come up after it happens so I will meet up with you. property (sic) is at 442 & 444 Flower Ave East. It's a mint green house with garage.
>
> Love you,
>
>   See you soon.
>    Stephanie."

*See* ECF Doc. No. 38-20 (November 8th letter); *see also* ECF Doc. No. 38-10 (Stephanie Converse Dep. Tr.), at p. 71, ln 4-21; ECF Doc. No 38-14, 15 (Affidavit of Detective Jorge Oro and attached recorded statement transcript). The envelope containing the letter was postmarked November 8, 2019. *See* ECF Doc. No. 38-20.

### C.     The Loss, Claim and State Farm's Investigation

On December 8, 2019, Stephanie Converse reported a claim to State Farm for a loss caused by a fire that purportedly occurred at the Property that day.  *See* ECF Doc. No. 38-16 (Loarca Decl.), Ex. 2 (claim log), at p. 45 (of exhibit).  Ms. Converse was assigned claim number 52-03L1-48Z.  *Id.*

On December 11, 2019, Julio Loarca of State Farm conducted a recorded interview of Stephanie Converse.  *See* ECF Doc. No. 38-27 (Loarca recorded interview transcript).  At the interview, Mr. Loarca asked the following question and Stephanie Converse gave the following answer:

"Q.     Did you ever ask anyone to burn the house?

A.     No."

*See id.* at p. 13 of 20.   At the interview, Mr. Loarca also asked the following questions and Stephanie Converse gave the following answers:

"Q.     Did you ever have a conversation with anyone about burning the house?"

A.     No.  Not that I can recall."

Q.     Not that…

A.     But no."

*See id.*  At the interview, Mr. Loarca also asked the following questions, and Stephanie Converse gave the following answers:

Q.     Well you will, that that's okay not that you can recall.  All right.  Did you have write to anyone either…

A.     No I did not."

Q.     All right let me let me, please let me ask the question.
A.     Sure.

> Q.     And I know these are difficult questions and difficult answers but I
>        do need to ask them.  It's part of our regular investigation.
>
> A.     Sure.
>
> Q.     Did you ever did you ever write to anyone either via text, via email
>        or in plain paper about um requesting to burn the house?
>
> A.     No I have not."

*See id.* at p. 13-14 of 20.

### D.     State Farm's Response to Interrogatories

The statements and sworn testimony referenced in this memorandum of law are by no means exhaustive of Plaintiff Stephanie Converse's numerous material misrepresentations and instances of false swearing. The Court is respectfully referred to State Farm's Response to Interrogatories, attached to Plaintiff's motion at ECF Doc. No. 39-17, for a detailed list of those instances where Ms. Converse's statements to Mr. Loarca, the detectives in Florida, and during her Examination Under Oath were completely contradictory of one another and demonstrably false.

## <u>LEGAL ANALYSIS</u>

### A.     State Farm's First, Second, Third, Seventh, Eighth and Ninth Affirmative Defenses Are Not Subject to Dismissal

State Farm's First Affirmative Defense (failure to state a claim), Second Affirmative Defense (no coverage under the Policy), Third Affirmative Defense (claims barred by unclean hands), Seventh Affirmative Defense (claims are subject to Policy's terms and conditions), Eighth Affirmative Defense (intentional concealment and/or misrepresentation of material facts and fraudulent conduct) and Ninth Affirmative Defenses (material misrepresentations and violations of the Policy's Concealment or Fraud provision) are not subject to dismissal, because there is

ample evidence in the record to support these defenses. Further, although some of these defenses may overlap or be subsumed by others, that is not a bar to their presentment at trial.

To establish a breach of an insurance policy based on "concealment, misrepresentation, or fraud by the insured ..., an insurer must show that the statements in question were (1) false, (2) willfully made, and (3) material to the insurer's investigation of the claim." *Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co.*, No. 12-cv-6509 (CM), 2014 WL 406542, at *1 (S.D.N.Y. Jan. 30, 2014) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir.), *cert. denied*, 474 U.S. 826 (1985)); *Scott v. AIG Prop. Cas. Co.*, 417 F. Supp. 3d 329, 347 (S.D.N.Y. 2019). "The insurer must prove fraud by clear and convincing evidence." *Id.* (quoting *Varda, Inc. v. Insurance Co. of N. Am.*, 45 F.3d 634, 639 (2d Cir. 1995)); *see Scott*, 417 F. Supp. 3d at 347.

"Materiality...is not 'determined by the *ultimate* importance of the information to the insurer but rather its relevance to the investigation *at the time asked*.'" *See Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*, 598 F. Supp. 2d 274, 277 (E.D.N.Y. 2008) (quoting *Harary v. Allstate Ins. Co.,* 988 F. Supp. 93, 104 (E.D.N.Y. 1997), *aff'd*, 162 F.3d 1147 (2d Cir. 1998)) (emphasis added). "[T]he materiality requirement is satisfied if the false statement [or demanded information] concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653P, 2015 WL 5714402, at *7 (W.D.N.Y. Sept. 29, 2015) (quoting *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (2d Cir. 1984)). Thus, false statements are material if they were "calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, *at that time*, a relevant or productive area to investigate." *Fine,* 725 F.2d at 184 (emphasis added).

As described above, on December 11, 2019, three days after the fire, Ms. Converse told State Farm in a recorded statement that she never asked anyone to burn down the Property, despite having sent Joseph Pelton a letter on November 8, 2019, offering him $5,000 to burn down her home. *See* ECF Doc. No. 38-17 (November 8th letter); *see also* ECF Doc. No. 38-10 (Stephanie Converse Dep. Tr.), at 71:4-21; ECF Doc. No. 38-14, 15. At her EBT, Ms. Converse authenticated her voice on the recording to Florida detectives. *See* ECF Doc. 38-10 (S. Converse Dep. Tr.) at 113:2 -115:10.

A few weeks later, on January 2, 2020, Ms. Converse admitted in a recorded statement to detectives from the Lee County Sheriff's Office in Florida (who at the time were assisting the Watertown Police Department in New York) that she wrote Joseph Pelton a letter asking him to burn down the Property in exchange for $5,000, confirming that she had previously willfully misrepresented facts to discourage, mislead or deflect State Farm's investigation. *See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript). At the time of the misrepresentation – three days after the loss – any potential evidence of arson was material to State Farm's investigation as it was then proceeding.

Plaintiffs' argument that "it is undisputed that no arson was committed relative to the Property," is simply not correct. The Fire Report states the following:

> 10/13/20 – The Cause of the fire was changed to reflect the findings of the investigation team.   The original fire report had the fire listed as unintentional with a cigarette as the ignition source.  *While this cannot be ruled out it also cannot be confirmed. Our office was provided with evidence that brings in other possible scenarios.*

(Emphasis added). *See* ECF Doc. No. 38-13 (amended fire report).  That Mr. Pelton may have been cleared of any wrongdoing was insufficient for the local authorities to rule out the possibility

that someone else may have set the property on fire or, at least, that possibility could not be ruled out. Thus, whether an arson occurred remains at issue even to this day.

State Farm confronted Ms. Converse about this false statement at an EUO on March 13, 2020, which was held two months after her recorded statement to the Florida detectives. Yet, at her EUO, Ms. Converse continued to mislead State Farm, claiming that she could not remember the contents of the letter after she wrote it, postmarked it, and mailed it either from or on her way to work, because she was intoxicated when she wrote it. *See* ECF Doc. No. 38-8 (EUO Part II), at 202-204, 219 (claiming not to recall offering anyone money to burn down her home). Ms. Converse continued to lie at her EUO about sending the letter testifying that she recalled sending Mr. Pelton a "birthday card." *See* ECF Doc. No. 38-8 (EUO Part II), at 202-204, 219. Her testimony is demonstrably false.

Ms. Converse stated to the Florida detectives that before the fire *she followed up* on her letter and called Mr. Pelton on two occasions asking him to "do it," *i.e.*, set fire to her home. *See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript). Ms. Converse could not have followed up her letter with two  telephone calls urging Mr. Pelton to burn down her house if she was too intoxicated to remember the contents of the letter in the first place.  In addition, on January 2, 2020 – a few short weeks after the Loarca interview on December 11, 2019 – Ms. Converse admitted to the Florida detectives in no uncertain or qualified terms that she had asked Joe Pelton to burn down the Property.  *See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript); *see also* ECF Doc. 38-10 (S. Converse Dep. Tr.) at 113:2 -115:10.

Detective Hill asked Ms. Converse to "tell me about your story," and in response to this open-ended inquiry, Ms. Converse answered:

>STEPHANIE CONVERSE:  Okay.  So, I had reached out to somebody and asked them to burn my house down.  And --
>
>DET. HILL:  Okay, who did you reach out to?
>
>STEPHANIE CONVERSE:  Joe Pelton.

*See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript);  *see also* ECF Doc. 38-10 (S. Converse Dep. Tr.) at 113:2 -115:10.[7]  Thus, within the span of four short months, Ms. Converse went from mailing a letter to Mr. Pelton (November 8, 2019), to denying to Mr. Loarca ever writing the letter (December 11, 2019), to admitting that she wrote it to the Florida detectives and recalling its exact contents without claiming to have been intoxicated when she wrote it (January 2, 2020), to acknowledging that she wrote it at her EUO, but claiming that she was too drunk to recall its contents (March 2020).

Additionally, at her EUO, Ms. Converse was asked the following question and gave the following response:

>Q.     During your interview on January 2nd, 2020, did anyone at the Lee County Sheriff's Department, either of the two individuals, tell you about knowing of this letter?
>
>A.     They said that they had DNA.
>
>Q.     DNA of what?
>
>A.     They said they had DNA and wanted to know if I sent Joe any letters, and I said I sent him a card, and they go, do you remember what you put in that card? And I said, I don't remember. I don't recall.

See ECF *See* ECF Doc. No. 38-8 (EUO Part II), at 219:16-220:1. This testimony is also demonstrably false, because Ms. Converse remembered exactly what she wrote in the letter when

---

[7] The entirety of the Ms. Converse's statement to the Lee County Sheriff's Office is attached as a certified transcript to the Affidavit of Detective Oro. *See* ECF Doc. No. 38-14, 15. As noted above, Ms. Converse authenticated the recording. *See* ECF Doc. 38-10 (S. Converse Dep. Tr.) at 113:2 -115:10.

she spoke to the Florida detectives. *See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript).

Ms. Converse compounded these acts of deception by attempting to prevent State Farm from discovering the conflict between the account of the Pelton letter she gave to the Florida detectives and the one she gave to State Farm.  At her EUO, State Farm's counsel asked Ms. Converse about her interview with the detectives in the following colloquy:

Q.     …The question is, was there any discussion on January 2nd when these two individuals from Lee County Sheriff's…Department came and seized your phone about that conspiracy to commit arson?

A.     They had asked me about Larkin and asked if maybe I had asked her to do it.
…

Q.     Did they ask about anybody else, whether you asked anybody else other than Larkin to do it, Traci or anyone else?

A.     They asked me if Traci did.

Q.     Whether you asked Traci?

A.     Yeah.

Q.     Anyone else?

A.     They had asked me if I knew a particular guy.

Q.     What does that mean, 'a particular guy'?

A.     They asked me, they go, Well, do you know this person, do you know that person? Like names. And I said yes.
        …

Q.     Did they tell you why they were asking about Joe Pelton?

A.     Just because Joe used to live with us and now Joe's back in New York.
…

Q.     …Do you know why they were asking about Joe Pelton?

13

A.      Because I may have joked around with Joe a long time ago.

*See* ECF Doc. No. 38-8 (EUO Part II), at 205-207.  Clearly, at her EUO taken in March 2020, Ms. Converse was still under suspicion (as was Mr. Pelton) for causing the fire to the property, which was, at that time, clearly material to State Farm's investigation.

According to Ms. Converse's EUO testimony, the officers asked her about Joe Pelton because "Joe used to live with us and now Joe's back in New York" and because she "may have joked around with Joe a long time ago."  *See* ECF Doc. No. 38-8 (EUO Part II), at 207.  But the transcript reveals that Detective Hill asked Ms. Converse to tell her "story," and in response to that open-ended question Ms. Converse admitted to asking Mr. Pelton to burn down her house, never once stating that she was too drunk to recall the letter's content.  *See* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript).

At her EUO, Ms. Converse may have been suggesting that the Pelton letter – the real reason for the Lee County Sheriff's Office's interrogation – was the "jok[ing] around" to which she referred in her EUO testimony.  *See* ECF Doc. No. 38-8 (EUO Part II), at 207.  But no rational juror could accept this suggestion because moments earlier she had testified that she was intoxicated at the time she wrote the Pelton letter and, therefore, could not even recall the contents. *See id.* at 202-203, 219.  Ms. Converse continued to mislead State Farm at the EUO, testifying that the Florida detectives asked her if she had asked one of the property's tenants, Traci or Larkin, to set the fire, but the transcript from her Florida interview contains no such questions.  *Compare* ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript) with ECF Doc. No. 38-8 (EUO Part II), at 205-206.

This false testimony conceals the contradictions between Ms. Converse's testimony to State Farm and her answers to the Lee County Sheriff's Office. "In such circumstances—where

the evidence of a claimant's knowledge of facts which entirely undermine the statements [she] made to [her] insurer is undisputed—courts in this state have found, as a matter of law, that the claimant made those statements willfully and with intent to defraud." *Scott.*, 758 F. Supp. 3d at 329. Here, Ms. Converse  concocted more falsehoods at her EUO to conceal her earlier lies to Mr. Loarca.

Ms. Converse also misrepresented to State Farm whether she spoke with Mr. Pelton before and after the loss.  At her EUO, Ms. Converse testified that the last time she spoke directly to Joe Pelton was *4-6 months before* the fire.  *See* ECF Doc. No. 38-8 (EUO Part II), at 209-210, 227. But, she told the detectives that she called him twice *between* sending the letter and the date of the fire imploring him to "do it*," i.e.*, between November 8th and December 8th.  ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript). At her EUO, Ms. Converse did not want State Farm to know that not only did she send the letter, but she followed-up with Mr. Pelton imploring him to do it, which directly undermines her "too drunk to recall" testimony. *See* ECF Doc. No. 38-8 (EUO Part II), at 233:18-233:10; and 234:7-11 (Ms. Converse falsely testifying that she was not trying to convince Mr. Pelton to do it; Ms. Converse falsely testifying that she never discussed the letter with Mr. Pelton between November 8 and December 8, 2019).

Ms. Converse also lied at her EUO when she testified about her conversation with Pelton after the fire.  At her EUO, she testified that she asked Mr. Pelton after the fire, "why are they contacting you" (as if she didn't know), but to the detectives she stated that during her call with Pelton he stated: "I didn't do it. I seriously did not do it … I was at work … Stephanie, I did not do it." *See* ECF Doc. No. 38-8 (EUO Part II), at 211-12, and compare with ECF Doc. No. 38-14, 15 (Oro Affidavit and recorded statement transcript). Through these numerous misrepresentations – which began three days after the loss and continued through her EUO – and, indeed, right through

her deposition in this case – Ms. Converse failed to give State Farm "a fair and frank disclosure of information reasonably demanded … to enable [State Farm] to determine whether there is a genuine defense." *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276 (1928).

The November 8th letter to Mr. Pelton takes on greater significance in the context of this case because a fire insurance claimant who is suspected of arson has a significant burden of cooperation as "direct proof of arson is seldom available and, therefore, [arson] can be established in civil cases by circumstantial evidence[.]" *Harary v. Allstate Ins. Co.,* 988 F. Supp. 92, 101-102 (E.D.N.Y. 1997). A letter soliciting arson a month before submitting a claim for a fire loss is certainly material to an insurer's investigation. *See gen*., *Greater New York Mut. Ins. Co. v. Utica First Ins. Co.*, 172 A.D.3d 588, 590 (1st Dep't 2019).  Thus, Ms. Converse's numerous false statements during her recorded statement and in connection with her EUO were calculated "to discourage, mislead or deflect [State Farm]'s investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." *Fine.,* 725 F.2d at 184. Having misrepresented facts material to a fire loss investigation, Ms. Converse materially breached her contract with State Farm. *Varda, Inc. v. Insurance Co. of N. Am.*, 45 F.3d 634, 639 (2d Cir. 1995); *Scott,* 417 F. Supp. 3d at 347.

Contrary to Plaintiffs' motion, materiality is not judged based on her misrepresentations' relation to the ultimate basis for denial, but instead to State Farm's investigation *as it was then proceeding i.e.*, at the time the questions were asked and the misrepresentations made were intended "to discourage, mislead or deflect."  "The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been." *Fine.,* 725 F.2d at 183. There can be no question that Ms. Converse's

answers during her recorded interview and at her EUO were meant to deflect and deter State Farm's investigation.

That State Farm was aware or in possession of the November 8th letter at the time Mr. Loarca asked Ms. Converse's questions about whether she solicited someone to set the fire does not change the materiality of her answers. *See gen*., *Cimato v. State Farm Fire & Cas. Co.*, 2020 U.S. Dist. LEXIS 115934, at *21 (W.D.N.Y. June 29, 2020) ("Plaintiff's false, willful, and material statements regarding the location and condition of the items listed on his Final Inventory included in his claim demonstrate Plaintiff's breach of the policy's concealment or fraud provisions" despite the insurer's prior knowledge of the existence and location of the inventory items); *Rickert v. Travelers Ins. Co.*, 159 A.D.2d 758 (3d Dep't 1990) (Plaintiff's inability to recall prior claims at his EUO was deemed not credible as a matter of law and material to the insurer's investigation despite the insurer being aware of the prior claims). Here, at the time Mr. Loarca was asking her the recorded statement questions and during her EUO testimony by State Farm's counsel – with Ms. Converse required to provide completely truthful responses during each – the fire was actively being investigated as an arson both by State Farm and the local authorities based on the existence of the November 8th letter. The existence, content, and circumstances surrounding the mailing of the letter were clearly material to State Farm's investigation as it was then proceeding.[8]

The fact that Mr. Pelton ultimately had an alibi on the day of the fire does not change this analysis because Ms. Converse's false statement about the Pelton letter – made three days after the

---

[8] Plaintiffs argue that because Mr. Loarca was already in possession of the letter that "no statement by Stephanie could possibly discourage, mislead or deflect the company's investigation into the suspected arson," but of course, this is not true.  Ms. Converse could have actually decided to tell the truth, which may have obviated the need for further investigation or avoided the necessity of the EUO altogether.  It may have also altered the ultimate outcome of the claim.

loss and during her EUO – concerned a topic relevant to State Farm's "investigation *as it was then proceeding*." *Eagley,* 2015 WL 5714402, at *7 (quoting *Fine,* 725 F.2d at 183) (emphasis added). Ms. Converse's misrepresentations were  especially egregious in the context of a fire loss, where "direct proof of arson is seldom available and, therefore, [arson] can be established in civil cases by circumstantial evidence[.]" *Harary*, 988 F. Supp. at 101.

The sequence of the above-referenced events and misrepresentations clearly demonstrate that they were made willfully and with the intent to deceive. Indeed, there are many cases, like this one, where an insured's statements are so antithetical to one another as to conclusively demonstrate their falsity and a willful intention to deceive sufficient to support a finding of summary judgment. *Scott,* 417 F. Supp. 3d at 350 ("detailed and antithetical statements undermine any possibility that the contradictions in Plaintiff's stories were the result of anything other than Plaintiff's willful disregard for the truth"). Contrary to Plaintiffs' arguments, this is a case about an insured's obligation to tell the truth, at all times, during the submission and investigation of a claim.  Here, State Farm knew of the existence of the letter prior to its recorded statement and subsequent Examination Under Oath of Ms. Converse, and gave her every opportunity to truthfully explain her knowledge of the existence and contents of the letter. Ms. Converse repeatedly declined this invitation.

Indeed, Ms. Converse was asked directly in her recorded statement and at her EUO if she ever requested that someone burn down her property; in her recorded statement she said no, but at her EUO, she concocted a story that she was too drunk to recall. Her EUO testimony, however, is *directly* contradicted by her statement to the Detectives in Florida where she stated that she called Mr. Pelton *twice* before the fire telling him to do it *i.e.*, set fire to her property. *See Scott*, 417 F. Supp. 3d at 350 ("In such circumstances—where the evidence of a claimant's knowledge of facts

which entirely undermine the statements [she] made to [her] insurer is undisputed—courts in this state have found, as a matter of law, that the claimant made those statements willfully and with intent to defraud").  Ms. Converse cannot have it both ways; she cannot be so drunk as not to remember even writing the letter to Mr. Pelton asking him to burn down her property, but then recalling that she called him twice before imploring him to do it.  These antithetical statements "undermine any possibility that the contradictions in Plaintiff's stories were the result of anything other than Plaintiff's willful disregard for the truth"). *Scott*, 417 F. Supp. 3d at 350.

The sole argument that Plaintiffs offer to demonstrate that Ms. Converse did not intend to defraud State Farm is that she, herself, did not actually set the house on fire. *See* Pltf. MOL, (Doc. 39-5), p. 12 of 17. This, despite sending the letter to Mr. Pelton offering him $5,000 out of her insurance recovery, twice imploring him to do it prior to the fire, and arranging to travel to New York to pay him for it. The intent to commit fraud is not synonymous with actually recovering insurance proceeds.  That Mr. Pelton did not go through with it does not change Ms. Converse's intent to defraud State Farm; one has nothing to do with the other. *See Sunbright Fashions, Inc. v. Greater New York Mut. Ins. Co.*, 34 A.D.2d 235, 237 (1st Dep't 1970), *aff'd* 28 N.Y.2d 563 (1971) ("[t]he concoction of ... elaborate falsehoods plus the manufacture of spurious documents to support them precludes mistake and establishes intent"); *see also Nipkow & Kobelt, Inc. Parliament Textile Div. v. North River Ins. Co.*, 673 F. Supp. 1185, 1188 (S.D.N.Y. 1987) ("when the insured submits false documents and swears falsely under oath, then subsequently admits to the falseness of the statements, the only reasonable conclusion is that the insured's actions were purposeful").  Here, there is simply no view of the evidence to suggest that Ms. Converse's elaborate falsehoods were anything but willful.

Based on the foregoing, and if State Farm's motion for summary judgment is not granted, State Farm's First Affirmative Defense (failure to state a claim), Second Affirmative Defense (no coverage under the Policy), Third Affirmative Defense (claims barred by unclean hands), Seventh Affirmative Defense (claims are subject to Policy's terms and conditions), Eighth Affirmative Defense (intentional concealment and/or misrepresentation of material facts and fraudulent conduct) and Ninth Affirmative Defenses (material misrepresentations and violations of the Policy's Concealment or Fraud provision) are not subject to dismissal.  Here, there is clear and convincing evidence in the record to support these defenses and to permit State Farm to present them at trial.

### B.    State Farm's Sixth Affirmative Defense Is Not Subject to Dismissal Because Richard Converse's Insurable Interest Was Satisfied

Plaintiff Richard Converse admits he maintained no personal property at the property, and therefore, did not maintain an insurable interest therein. Pltf. MOL [Doc. 39-5], p. 10 of 17. Mr. Converse also admitted during his Examination Before Trial to having no financial interest in the purchase of the property (*i.e.*, he did not contribute toward any down payment, closing costs, or monthly mortgage), its maintenance, share in any rental income generated from the property at any time, declared rental income from the property on his taxes, nor did he even know that Stephanie had listed it for sale. *See* ECF Doc. No. 38-9 (Richard Converse Dep. Tr.), 27:2-17; 30:22-34:24; 36:4-25; 38:6-40:14.  Ms. Converse confirmed at her EUO that Mr. Converse had no economic interest in the property having contributed nothing toward its purchase, monthly payments, insurance, or maintenance. *See* ECF Doc. No. 38-8 (EUO Part II), at 155:10-156:7.

While Mr. Converse was formerly the deeded owner, which gave him a 50% interest in the physical structure at the time of the fire, his joint interest was satisfied when State Farm paid 100% of the outstanding mortgage balance to the mortgagee under the terms and conditions of the

policy's mortgage clause. Mr. Converse had no other insurable interest other than his financial interest in the physical structure of the building, which was paid.  Furthermore, Mr. Converse transferred his ownership interest in the property on or about February 21, 2021. *See* ECF Doc. No. 38-9 (Richard Converse Dep. Tr.), at 52:16-54:7.

Insurable Interest is specifically defined in § 3401 of the Insurance Law as follows: "No contract or policy of insurance on property made or issued in this state or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. In this article, 'insurable interest' shall include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage." (Emphasis added). The statute is aimed at preventing fraud against the insurer by making sure that an insured has a valid interest in the property for which a policy has been issued. *See Azzato v. Allstate Ins. Co.*, 99 A.D.3d 643, 648 (2d Dep't 2012); *see* also *Citizens Sav. and Loan Ass'n of New York v. Proprietors Ins. Co*. 78 A.D.2d 377 (2d Dep't 1981) (noting that a named insured must have an insurable interest in subject matter of the policy of insurance); *Stainless, Inc. v. Employers Fire Ins. Co*. 69 A.D.2d 27 (1st Dep't 1979), *aff'd*, 49 N.Y.2d 924 (1980) ("The existence of an insurable interest in property is necessary to the validity of a policy of insurance, since a policy on property wherein insured has no interest or title is void"); *Etterle v. Excelsior Ins. Co. of New York,* 74 A.D.2d 436 (4th Dep't 1980) ("[I]n order to prevent fraud and crime and to prohibit wagering contracts on property in which an insured possesses no interest, lack of insurable interest in the property insured renders property insurance void and unenforceable).  Plaintiff Richard Converse has no substantial economic interest in the property after the mortgagee has been satisfied and because he has no financial interest in the property from

its purchase through the date of the fire, and, indeed, because the property was transferred solely to Stephanie Converse in 2021, he certainly has no continuing interest.

Additionally, although not necessarily an argument as to Richard's lack of an insurable interest, contrary to Plaintiff's motion, the Policy does not provide coverage for "loss of value of the property." Pltf. MOL [Doc. 39-5], p. 10 of 17. Additionally, while the policy may cover Richard's 50% interest in debris removal expenses, he never submitted a claim for this expense, which is only payable on an incurred basis under the policy. *See* ECF Doc. No. 17 (Policy); *See* also ECF Doc. No. 38-9 (Richard Converse Dep. Tr.), at 25-26 (no repairs have been made nor has the property been demolished).

Accordingly, if State Farm's motion for is not granted, State Farm should be permitted to argue at trial that Plaintiff Richard Converse lacked an insurable interest.

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiff's motion for partial summary judgment seeking to dismiss the First, Second, Third, Sixth, Seventh, Eighth, and Ninth affirmative defenses asserted in State Farm's Amended Answer, together with such other and further relief as this court deems just and necessary.

Dated: Uniondale, New York
      December 9, 2022

                                    RIVKIN RADLER, LLP
                                    Attorneys for Defendant

                                    *Michael P. Welch*
                                    _____
                                    Michael P. Welch
                                    926 RXR Plaza
                                    Uniondale, New York 11556-0926
                                    (516) 357-3000
                                    RR File No.: 10660-70006