**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD CONVERSE, and STEPHANIE**
**CONVERSE,**

                                        **Plaintiffs,**

        **vs.**                                                **5:21-CV-457**
                                                               **(TJM/ATB)**


**STATE FARM FIRE AND CASUALTY**
**COMPANY,**

                                        **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

Before the Court are the parties' motions for summary judgment.  See dkt. # 38-39.

The Court will decide the motions without oral argument.

## I.   BACKGROUND

This case concerns insurance coverage for rental property in Watertown New York.

Plaintiffs Richard Converse and Stephanie Converse own the property.  Defendant State

Farm Fire and Casualty Company ("State Farm") insured the property at the relevant time.

After a fire on December 8, 2019, Plaintiffs sought coverage under the insurance policy.

Plaintiffs brought this action when Defendant denied coverage for much of the claim.

The property in question was at 442 Flower Avenue East, Watertown, New York.

Defendant's Statement of Material Facts ("Defendant's Statement"), dkt. # 44-9, at ¶ 1.[1]

State Farm insured that property under a homeowners policy. Id.  The policy in question contained certain provisions that Defendant highlights. Id. at ¶¶ 2-4.  One provision describes an insured's duties after a loss, which include a requirement that the insured "must cooperate with us in the investigation of the claim" and provide within 60 days a "signed, sworn proof of loss" that details the "time and cause of the loss," describes damaged structures and property, and details expenses for rental of replacement property. Id.  Another provision describes "conditions," which explains that "[w]e do not provide coverage for an insured who, whether before or after a loss has: a. intentionally concealed or misrepresented any material fact or circumstances; or b. engage[d] in fraudulent conduct." Id. at ¶ 3.  A final provision covers lawsuits against State Farm, setting out that "[n]o action will be brought unless there has been compliance with the policy provisions. Any action by any party must be started within two years after the date of loss or damage." Id. at ¶ 4.

Though they disagree about the implications of the document, the parties agree that Plaintiff Stephanie Converse sent a letter to Joseph Pelton on or about November 8, 2019. Id. at ¶ 5.  The letter stated:

Joe,

How have you been?  I miss you!  Hope all is well and your (sic) doing good.

---

[1]The parties filed the statements of material facts with citations to the record in support of their motions as required by the local rules.  The parties also filed responses to the opposing parties' statements.  Plaintiffs also filed a statement of additional facts in opposition to Defendant's motion.  The Court will cite to the Defendant's statement in support of its motion for facts which are not contested and otherwise note where conflicts exist.

Having issues with my house again.  Need help this time!  I will pay $5,000 cash when I get the insurance.  The back door will be unlocked and open to the basement.  That's where the access to utilities are.  Tues and Wed (sic) are good during day.  Make look like electrical.  I will come up after it happens so I will meet up with you.  property (sic) is at 442 & 444 Flower Ave. East.  It's a mint green house with garage.

Love you,

See you soon.

Stephanie.

Id.  The envelope that contained the letter had a November 8, 2019 postmark.  Id.  While Plaintiffs admit that Stephanie Converse mailed the letter, they "deny any implication or allegation that Stephanie Converse committed insurance fraud, paid anyone to commit arson on the property, or was in any way involved in the fire that caused the loss on the property."  Plaintiffs' Response to Defendant's Statement of Material Facts ("Plaintiff's Response") at ¶ 5.

Stephanie Converse filed a claim on December 8, 2019 for the loss caused by the fire.  Defendant's Statement at ¶ 7.  Julio Loarca of State Farm conducted a recorded interview of Stephanie Converse on December 11, 2019.  Id. at ¶ 9.  Loarca asked Stephanie Converse if she had "ever ask[ed] anyone to burn the house?"  Id. ¶ 10.  Converse responded "no."  Id. Loarca also asked "[d]id you ever have  a conversation with anyone about burning the house?"  Id. at ¶ 11.  Converse replied "[n]o.  Not that I can recall."  Id.  When asked about the phrase "not that," Converse replied, "but no."  Id.  Loarca also asked Stephanie Converse is she had "ever writ[ten] anyone either via text, via email or paper about . . . requesting to burn the house."  Id. at ¶ 12.  Converse replied "[n]o I have not."  Id.

State Farm mailed Stephanie Converse a letter on December 11, 2019, which she received on December 17, 2019.  Id. at ¶¶ 14-15.  The letter contained a blank Sworn Statement in Proof of Loss and a return envelope.  Id. at ¶ 16.  The letter stated that the Sworn Statement should be returned by February 17, 2020.  Id. at ¶ 16.  A follow up letter from State Farm Counsel Roy Mura on January 2, 2020 reminded Stephanie Converse that she had to return the sworn statement "as requested in State Farm's letter dated December 11, 2019."  Id. at ¶ 22.  That letter warned that "a failure . . . to timely complete and return the Sworn Statement in Proof of Loss form for the reported loss may result in loss [of] your rights under the . . .  policy."  Id. at ¶ 23.  The letter also informed Plaintiff that State Farm did not waive any policy conditions and sought to schedule an examination under oath for Stephanie Converse.  Id. at ¶ 24.  Converse did not submit a sworn statement by February 17, 2020.  Id. at ¶ 25.

On January 2, 2020, Detective Hill of the Lee County, Florida, Sheriff's Office conducted a recorded interview with Plaintiff Stephanie Converse.  Id. at ¶ 17.  Detective Hill asked Plaintiff to "be specific and tell me about your story there and I'm asking you to tell me the truth and not lie to me" about the fire.  Id. at ¶ 18.  Stephanie Converse responded that "I had reached out to somebody and asked them to burn my house down . . . Joe Pelton."  Id.  Converse explained that she had written "Joe a letter and asked him."  Id. at ¶ 19.  They spoke on the phone, however, and Pelton told Converse that he was "not going to do it, and that he doesn't have the heart, because it would, you know, especially hurting somebody[.]"  Id.  Asked what would "motivat[e]" Pelton to burn the house down, Converse replied "[f]ive thousand dollars."  Id.  Converse further stated that she spoke to Pelton on the phone "like a couple of weeks" after sending the letter.  Id. at ¶

4

20.  She told him that "I wanted him to do it."  Id.  In a later call, however, Pelton told

Converse that he "couldn't do it," though Converse also remembered that Pelton may

have told her he would go and look at the property.  Id.  That call came "[w]ithin about

three days."  Id.  Converse also admitted that she gave Pelton "specific instructions" in her

letter, directing him on where to get into the home and providing days when the tenants

would likely be away.  Id. at ¶ 21.

Stephanie Converse appeared for an examination under oath ("EUO") in

connection with her insurance claim on March 13, 2020.  Id. at ¶ 26.  Converse's counsel

emailed a Sworn Statement in Proof of Loss to State Farm on March 12, 2020.  Id. at ¶

27.  She also provided that Statement at the start of her March 13, 2020 examination.  Id.

During the examination, State Farm contends that Converse stated "she could not think of

anything inaccurate or imprecise in her interview" with Loarca.  Id. at ¶ 28.  Plaintiffs point

out that Stephanie Converse affirmed during the examination that "everything as far as

you can recall [was] truthful about what you told Mr. Loarca[.]" Plaintiffs' Response at ¶ 28.

Converse further testified that she could not "recall asking anybody to burn . . . I mean I

can't remember.  I don't know if I did or I didn't."  Id. at ¶ 29.  She further testified that she

could not "recall" whether she had offered "to pay anybody money to" burn the property

down.  Id.

Stephanie Converse further testified about an interview with two Lee County,

Florida Sheriff's Office members, who had come to her home and "seized" her phone.  Id.

at 30.  The investigators had asked Converse if she had spoken with one of the property's

tenants and "asked her to do it."  Id.  They had also asked her if she "knew a particular

guy."  Id.  According to Converse, the investigators had asked her about Joe Pelton

5

"because Joe used to live with us and now Joe's back in New York." Id.  Asked to explain why the investigators asked about Pelton, Converse responded that "I may have joked with Joe a long time ago." Id.  Further questioned about whether the two had any "conversation or communication with Joe about the property after that," Plaintiff stated "I can't recall.  I don't believe so or I can't recall.  I don't know." Id.  Plaintiff testified that "I sent Joe a card in the mail, like a birthday card.  That's the only really [sic] communication." Id.  Pressed about whether she sent any communication concerning the house, Stephanie Converse testified that "I can't recall." Id.  When confronted with the letter to Pelton, Plaintiff testified that "I recall wrting him a letter, but I don't recall what I put in it because I was intoxicated." Id. at ¶ 31.

Defendant denied Stephanie Converse's claim on October 7, 2020. Id. at ¶ 33.

Plaintiffs filed a Complaint in the Supreme Court of Jefferson County, New York, on March 22, 2021. See dkt. # 2.  The Complaint contains three counts.  Count 1 alleges breach of contract.  Count 2 seeks declaratory judgment.  Count 3 alleges a breach of the covenant of good faith and fair dealing.  Defendant removed the case to this Court. See dkt. # 1.  After the Court granted the Defendant's motion to dismiss Counts 2 and 3 of the Complaint, the parties engaged in discovery.  At the close of discovery, the parties filed the instant motions.

## II.   LEGAL STANDARD

The parties seek summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.   ANALYSIS

For reasons that will become apparent, the Court will first address Defendant's motion.

### A.   Defendant's Motion

Defendant argues that State Farm had no obligation to pay Plaintiffs' claim under the policy for various reasons.  The Court will address them in turn.

### i.    Material Misrepresentations

Defendant first argues that State Farm has no obligation to provide coverage under the policy because Stephanie Converse breached the insurance contract by making material misrepresentations in reference to her claim.

"'To void a policy for concealment, misrepresentation, or fraud by the insured . . . an insurer must show that the statements in question were (1) false, (2) willfully made, and (3) material to the insurer's investigation of the claim.'" Scott v. AIG Prop. Cas. Co., 417 F.Supp.3d 329, 347 (S.D.N.Y. 2019) (quoting Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co., No. 12-cv-6509 (CM), 2014 US. Dist. LEXIS 13161, 2014 WL 406542, at *1 (S.D.N.Y. Jan. 30, 2014)).  If the policy contains terms "'to the effect that a claim is void if an insured intentionally conceals or misrepresents a material fact concerning a claim under the policy, it is clear that good faith and fair dealing are the norms by which proofs of loss are measured.'" Id. (quoting Admiral Indem. Co. v. Bouley Int'l Holding, LLC, No. 02-cv-9696 (HB), 2003 U.S. Dist. LEXIS 20324, 2003 WL 22682273, at *4 (S.D.N.Y. Nov. 13, 2003)).  The insurer's proof must be "'by clear and convincing evidence'" Id. (quoting Admiral Indem., 2003 U.S. Dist. LEXIS 20324 at *4).

The Second Circuit has explained:

The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been.  The purpose of a provision requiring an insured to submit to an examination under oath is to enable the insurance company to acquire knowledge or information that may aid it in its further investigation or that may otherwise be significant to the company in determining its liability under the policy and the position it should take with respect to a claim.  Thus the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as ti was then proceeding.

Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 183 (2d Cir. 1984).  Thus, "the

materiality of false statement is not determined by whether or not the false answers deal with a subject later determined to be unimportant because the fire and loss were caused by factors other than those with which the statements dealt." Id. at 184.  Such false answers are also material if those answers "may be said to have been calculated either to discourage, mislead, or deflect the company's investigation in any area that might seem to the company, at the time, a relevant or productive area to investigate." Id.  Still, "if the misrepresentation does not affect the outcome of the insurer's decision, it is not material." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 84 (2d Cir. 2002).

In the end, "the key element for materiality under the *Fine* standard is the *effect* of the misrepresentation on the insurance company's investigative attitude and activities." Angevine v. State Farm Fire & Cas. Co., No. 98-9561, 1999 U.S. App. LEXIS 20214, at *5 (2d Cir. Aug. 20, 1999) (emphasis in original). While in most cases materiality is a fact question to be resolved by a jury, "'where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine.'" Scott, 417 F.Supp.3d at 347 (quoting Scottsdale Ins. Co. v. Priscilla Properties, LLC, 254 F.Supp.3d 476, 482 (E.D.N.Y. 2017)).  "'Courts routinely find that information concerning an insured's credibility or motive is material where the insurer reasonably suspects arson or fraud in connection with the claim.'" Id. at 349 (quoting Eagley v. State Farm Ins. Co., No. 13-cv–6653, 2015 U.S. Dist. LEXIS 132184, 2015 WL 5714402, at *10 (W.D.N.Y. Sept. 29, 2015)).

Defendant points to a number of statements Stephanie Converse made in connection with her claim that State Farm contends were false and material to the claim. State Farm points to a statement Converse made on December 11, 2019, where she

asserted that she had never asked anyone to burn the property down.  Converse had written Joseph Pelton a letter in November 2019 that offered him $5,000 to burn the home down.  On January 2, 2020, Stephanie Converse admitted to detectives from the Lee County Sheriff's office in Florida that she had asked Pelton to burn down the property in exchange fro $5,000.  According to Defendant, Plaintiff also admitted that she had "previously willfully misrepresented facts to discourage, mislead, or deflect State Farm's investigation."  When confronted by State Farm with her false statements in her March 2020 EUO, Plaintiff continued to mislead Defendant, contending that she could not remember the contents of the letter because she was intoxicated when she wrote it.  Plaintiff had told detectives, however, that she had followed up on the letter to Pelton by calling Pelton twice to ask him to "do it."  Plaintiff also misrepresented her statements to detectives about Pelton during the EUO, contending that she had only admitted that she joked with him "al long time ago" about burning the home down.  This EUO testimony, Defendant claims, "conceals the contradictions between Ms. Converse's testimony to State Farm and her answers to the Lee County Sheriff's Office."  Plaintiff also misrepresented her statement to the Florida detectives, alleging that they asked her whether she had sought to have one of her tenants burn the property down, Defendant claims.  The transcript of their interview contains no such evidence.  Converse also told State Farm that she had not spoken to Pelton after the fire, even though she had told detectives the opposite.  All of this evidence is material even though Pelton had an alibi and was not charged with setting the fire, Defendant claims, because State Farm had information about the letter to Pelton shortly after the fire and sought to investigate his role in the matter.  Plaintiff's misrepresentations, Defendant claims, served the purpose of

frustrating that investigation.

Plaintiffs deny that Stephanie Converse willfully made any material misrepresentations. They contend that "[n]one of the supposedly 'false' statements alleged in Defendant's Interrogatory Responses affected the outcome of Defendant's decision to deny coverage here." Plaintiff admits that she did not admit that she had written the letter to Pelton during the initial recorded interview about the claim. She acknowledges that she wrote the letter, but insists that she did not commit arson. She argues that "[s]ince Mr. Loarca knew about the Pelton Letter when he asked certain questions about arson to Stephanie Converse, her response to these questions could not possibly have any impact on Defendant's investigation." Loarca admitted at his deposition that he knew about the letter when he asked Plaintiff about it. Plaintiff argues that "[i]t appears to be an undisputed fact that Defendant suspected arson and launched an investigation into a potential arson by Stephanie Converse and Joe Pelton immediately. Plaintiffs submit that this investigation was completely unaffected by Stephanie's answers to the question about arson during the December 11, 2019 phone interview." Plaintiffs claim that, since Defendant was already investigating an arson by Converse and Pelton when Stephanie Converse answered the questions, "nothing Stephanie said could possibly discourage, mislead or deflect the company's investigation into the suspected arson." Even if Converse had understood and answered the questions about the Pelton letter, "Defendant would still have, justifiably, continued its ultimately fruitless investigation into arson." Plaintiffs also deny that Stephanie Converse willfully made statements designed to defraud Defendant, and argue that Defendant cannot prove such intent by clear and convincing evidence.

11

Plaintiffs do not seriously dispute that Stephanie Converse made misrepresentations to State Farm during the course of the investigation. They could not. The undisputed evidence before the Court indicates that, when asked on December 11, 2019, whether she had ever asked anyone to start a fire on the property in question, Stephanie Converse told an investigator that she had made no such request. Stephanie Converse had made such a request the previous month in a letter to Joseph Pelton. Converse admitted to sending the letter to other investigators less than a month later, but when asked during her examination under oath about the letter, she claimed she could not recall sending the letter because she had been intoxicated. No reasonable juror could find that Stephanie Converse did not make false statements to Defendant's investigators regarding her contacts with Joseph Pelton and her expressed desire to pay him to burn the home down. A jury would be required to find that Plaintiff made misrepresentations in connection with State Farm's investigation of the claim.

Plaintiffs dispute that Stephanie Converse's misrepresentations were willful. Plaintiffs argue:

> It bears repeating that Stephanie Converse did not commit arson on the Property, and did not hire Mr. Pelton to set fire to the Property. Therefore, it is legally impossible for Stephanie Converse to make an intentional misrepresentation about a fraud she never committed. According to her statement to the Lee County Sheriff, Stephanie knew Mr. Pelton didn't want to start a fire for her in the property at the time she spoke with Mr. Loarca on December 11, 2019. Stephanie also told the Sheriffs repeatedly that, "I didn't think it would happen."

Plaintiffs confuse the issue. Defendant does not argue that Plaintiff dissembled about the cause of the fire at the home, committed arson herself, or paid Joseph Pelton to set the home on fire. Plaintiff's alleged misrepresentation here is her statements to investigators that she did not ask anyone to start the fire, that she was unaware of any mail sent to

12

Pelton, or that she did not remember a letter sent to Pelton.  The uncontroverted evidence

related above makes clear that Plaintiff knew she sent the letter to Pelton and then denied

she sent the letter when interviewed by claims investigators.  Stephanie Converse denied

knowledge of the letter to State Farm's investigator shortly before she admitted she wrote

the letter to police investigators and continued those misrepresentations in her EUO.[2]

The Court finds that as a matter of law Plaintiff made these misrepresentations

willfully.  Taken as a whole, the Court must conclude that Plaintiff Stephanie Converse's

statements represented a continuing attempt to conceal from State Farm that she had

contacted Pelton and offered him money to burn down the insured property.  Plaintiff

made multiple contradictory statements to various investigators, and the Court concludes

that a reasonable juror could not find that such contradictory statements were the result of

mistake or misunderstanding, but that the differences between what Plaintiff told various

investigators were intentional.  Though less extreme than the plaintiff in <u>Scott v. AIG Prop.</u>

<u>Cas. Co.</u>, 417 F.Supp.3d 329 (S.D.N.Y. 2019), where the insurance claimant had declared

bankruptcy but still managed to assert that he lost more than $1 million in property in a fire

that occurred after the bankruptcy and then made a serious of contradictory statements in

various proceedings, the discrepancies between what Stephanie Converse told police

_____

[2]Defendant's reply brief describes the situation quite well:

Within the span of four short months, Ms. Converse went from mailing a letter to
Mr. Pelton (November 8, 2019), to denying to Mr.Loarca ever writing the letter
(December 11, 2019), to admitting that she wrote it to the Florida detectives and
recalling its exact contents without claiming to have been intoxicated (Janaury 2,
2020), to acknowledging that she wrote it at her EUO, but claiming that she was too
drunk to recall its contents (March 2020).

Dkt. # 45, at 4.

investigators and insurance investigators similarly demonstrate willful misrepresentation.

In Scott, the court concluded that plaintiff's "detailed and antithetical statements

undermine any possibility that the contradictions in Plaintiff's stories were the result of

anything other than Plaintiff's willful disregard for the truth." Id. at 350.  Here, Stephanie

Converse's statements to investigators repeatedly shifted over a short period of time, and

her statements to insurance investigators always moved in a direction that would

disconnect her from the things she admitted to police she told Pelton.  Stephanie

Converse admitted to the police that she asked Pelton to start a fire, but denied she made

such a request to State Farm.  The fact that no one has ever been charged with arson for

the incident and the fact that Pelton has an alibi for the day of the fire does not alter the

fact that Stephanie Converse misrepresented to State Farm that she had never asked

anyone to light the property on fire.  A reasonable juror would have to find that her

misrepresentations were willful.

The final question for the Court in this respect is whether Stephanie Converse's

misrepresentations to the Defendant were material.  Plaintiffs contend that her

misrepresentations were not material because Loarca knew about the Pelton letter when

he asked Converse about it, and thus her misrepresentations did not effect the

investigation.[3]  Courts are clear, however, that "the materiality of false statements during

---

[3]Plaintiffs argue:

Defendant was already investigating arson by Stephanie and Joe Pelton when the question was asked, and therefore nothing Stephanie said could possibly discourage, mislead or deflect the company's investigation into the suspected arson.

Dkt. # 44-6 at 5.

an insurance company investigation is not to be judged by what the facts later turn out to have been." Fine, 725 F.2d at 183. "The purpose" of procedures like examinations under oath and other investigative measures "is to enable the insurance company to acquire knowledge or information that may aid it in its further investigation or that may otherwise be significant to the company in determining its liability under the policy and the position it should take with respect to the claim." Id. Even if the investigator knew about the letter Stephanie Converse sent when the investigator asked about it, Converse's testimony about the document is material as a matter of law, since the investigator would need to know about Converse's purpose in writing the letter, whether she expected Pelton to act, whether she had any additional contact with Pelton, and whether he responded–among other issues–in determining the proper status of the claim. By denying any knowledge of the letter, Converse acted in a way that could frustrate the ongoing investigation. A reasonable juror could only find that her misleading conduct was material.

The Court therefore finds that the evidence establishes that Stephanie Converse made material misrepresentations to insurance investigators as a matter of law. Stephanie Converse therefore breached the insurance contract and Defendant is entitled to summary judgment in this respect.

## II.    Failure to Cooperate

Next, State Farm contends that Stephanie Converse failed to cooperate as required by the policy. In New York, "[a] fire insurance policy is nothing more than a contract by the insurer to indemnify the insured against a property loss which it has sustained." Dyno-Bite, Inc. v. Travelers Cos., 80 A.D.2d 471, 473 (4th Dept. 1981). Such policies "almost universally require, as a condition precedent to performance of the promise to indemnify,

15

that the insured co-operate with the insurer in the investigation of the fire." Id.  Failing to cooperate "is a material breach and a defense to a suit on the policy." Id.  Under New York law, an "insured promises to render full and prompt assistance to discover the facts surrounding the loss and anything less results in a breach of contract." Id. at 474.  Though "the affirmative defense of 'willful concealment or misrepresentation of material facts' requires proof by clear and convincing evidence, failure to cooperate need be proved only by a preponderance of the evidence." Harary v. Allstate Ins. Co., 988 F.Supp. 93, 102 (E.D.N.Y. 1997) (quoting Ashline v. Genesee Patrons Co-Op Ins. Co., 224 A.D.2d 847, 638 A.D.2d 847, 639 (3d Dept. 1996)).

While an insurer "may disclaim coverage" if "an insured *deliberately* fails to cooperate with its insurer in the investigation of a covered incident as required by the policy, "'a very heavy burden' is imposed on the disclaiming insurer." N.Y. Cent. Mut. Fire Ins. Co. v. Salomon, 11 A.D.3d 315, 316 (1st Dept. 2004) (quoting Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp., 212 A.D.2d 419, 420-421 (N.Y. 1995) (emphasis in original).  An insurer must satisfy a three-part test: "it must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that its efforts were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured was one of 'willful and avowed obstruction.'" Id. (quoting Thrasher v. United States Liab. Ins. Co., 19 N.Y. 2d 159, 168 (N.Y. 1967)).   "The insured need not have openly 'avowed' the intent to obstruct the insurer; however, the showing must support the inference that the insured's failure to cooperate was deliberate." Id.  Such "'willful and avowed obstruction'" can occur when an insured makes "false statements concerning the facts of the accident," since such conduct "breached the condition of co-operation and

16

seriously prejudice[s] the insurer in handling the claims and lawsuits arising out of the accident." State Farm Mut. Auto. Ins. Co. v. Brown, 21 A.D. 742, 742 (4[th] Dept. 1964) (quoting Coleman v. New Amsterdam Casaulty Co., 247 N.Y. 271, 276 (N.Y. 1928)). Testifying falsely can also breach the condition of cooperation. See, e.g., Lumbermans Mut. Casualty Co. v. Goldwasser, 7 A.D.2d 849, 849 (2d Dept. 1959) ("The insured, on a number of occasions, orally and in writing, stated to appellant that he had never given his son permission to drive the car. Subsequent to making these statements, the insured testified, during an examination before trial, that his son did have permission to drive the car.").

Defendant points to Stephanie Converse's statements to Loarca during the recorded interview three days after the loss. Loarca asked simple and direct questions about whether Converse had ever asked anyone to burn down the property. Converse did not provide a fair and frank disclosure of the information required and instead dissembled about the letter to Pelton. When confronted about her false statements to Loarca during the examination under oath, Plaintiff again allegedly misled State Farm by claiming that she had been intoxicated when she wrote the letter and did not remember its contents. Stephanie Converse made these statements even though she admitted to Lee County Sheriff's Office investigators that she had written the letter. Converse thus made misrepresentations about facts material to State Farm's investigation, Defendant argues, and breached the terms of the contract. Plaintiff responds that she cooperated with the information by providing the information requested in a letter from Defendant's counsel on January 2, 2020. Stephanie Converse did not invoke her 5th Amendment rights during the examination, but instead answered questions. Plaintiffs contend that Defendant has not

17

met "its initial burden to show that Plaintiffs failed to cooperate with the investigation.

Alternatively, there is a question of fact if Plaitniff's [sic] cooperated sufficiently."

    The Court will grant the motion in this respect as well.  The uncontested facts

related above demonstrate that Stephanie Converse, when interviewed on two occasions

by State Farm during investigation of the claim, misrepresented her knowledge of the

letter she wrote to Joe Pelton asking him to burn down the property in exchange for

$5,000.  State Farm had reason to suspect arson during both the phone interview and the

examination under oath, and Stephanie Converse told materially different stories to State

Farm than she did to police investigators.  Such conduct obstructed State Farm's efforts to

investigate the claim.  There can be no dispute that State Farm–which began its

investigation shortly after the fire and consistently demanded information and cooperation

from the insureds through their counsel and by directed communication, acted diligently

and in a manner reasonably calculated to ensure Converse's cooperation.  Given the

inconsistencies in Stephanie Converse's stories to various parties and her clear

misrepresentation to State Farm about her knowledge of the letter to Pelton, no

reasonable juror could find that Converse's misrepresentations were not willful.  "An

insurance company that reasonably suspects arson has the right to obtain 'all knowledge,

and all information as to other sources and means of knowledge, in regard to the facts,

material to their rights to enable them to decide upon their obligations, and to protect

against false claims.'" Richie's Corner, Inc. v. Nat'l Specialty Ins. Co., 598 F.Supp.2d 274,

276 (E.D.N.Y. 2008) (quoting Dyno-Brite, Inc., 80 A.D.2d at 474).  Moreover, "[t]he Second

Circuit has made it clear that summary judgment is appropriately granted for failure to

cooperate in an arson investigation when the insured's action is deemed willful."  Id. at 278

18

(citing Rosenthal v. Prudential Property & Cas. Co., 928 F.2d 493 (2d Cir. 1991)).  Since there can be no reasonable dispute that Converse willfully failed to cooperate in the investigation, the Court will grant the Defendant's motion in this respect as well.

        **iii.**    **Proof of Loss**

Defendant next contends that Plaintiffs breached the insurance contract by failing to provide requested proof of loss documents in a timely fashion.

"When an insurer gives its insured written notice of its desire that proof of loss under a policy of fire insurance be furnished and provides a suitable form for such proof, failure of the insured to file proof of loss within 60 days after receipt of such notice, or within any longer period specified in the notice, is an absolute defense to an action on the policy, absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense."  Igbara Realty Corp. v. New York Property Ins. Underwriting Assoc., 63 N.Y.2d 201, 209-10 (N.Y. 1984).  New York "'Insurance Law § 3407 provides that the failure to produce proof of loss will not invalidate the claim unless the insurer gives a written notice and a blank form."  Turkow v. Erie Ins. Co., 20 A.D.3d 649, 649 (3d Dept. 2005) (quoting Bailey v. Nationwide Mut. Fire Ins. Co., 133 AD2d 915, 916 (N.Y. 1987)). "It is well settled that 'provisions of an insurance contract for furnishing notice and proof of loss are to be liberally construed in favor of the insured' and '[s]ubstantial and not strict compliance with the provision[s] of such forms is all that is required." Id. at 650.

As explained above, the fire at the property in question occurred on December 8, 2019.  The parties also agree that State Farm provided written notice of its desire to have Stephanie Converse provide a sworn statement of proof of loss, provided Converse with a form to return, and specified that such proof should be returned by February 17, 2020.

19

There is no dispute that the Plaintiff did not return a sworn statement of proof of loss until

March 12, 2020, well after the date specified by State Farm in correspondence to

Stephanie Converse.  Absent some valid excuse from Plaintiffs, Defendant has an

absolute defense to Plaintiffs' claims.  Plaintiffs point to waiver and estoppel as grounds to

excuse Stephanie Converse's failure to timely provide the sworn statement.  The Court will

address waiver and estoppel in turn.

In New York, "[w]aiver is an intentional relinquishment of a known right and

should not be lightly presumed." Gilbert Frank v. Federal Ins. Co., 70 N.Y.2d 966, 968

(N.Y. 1988).  "[I]n the contractual context," waiver "must reflect a clear manifestation of

intent to relinquish the protections that are otherwise afforded to the waiving party." 159

MP Corp. v. Redbridge Bedford, LLC, 160 A.D.3d 176, 189 (2d Dept. 2018).  "A waiving

party must have 'lulled [the other party] into sleeping on its rights under the insurance

contract.'" Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir.

2006) (quoting Gilbert Frank, 70 N.Y. 2d at 968).

"Estoppel . . .  arises where an insurer acts in a manner inconsistent with a lack of

coverage, and the insured reasonably relies on those actions to its detriment." Burt Rigid

Box v. Travelers Prop. Cas. Co., 302 F.3d 83, 95 (2d Cir. 2002).  Like waiver, "'[e]stoppel

is not to be found lightly[.]" Dilinger Gaines Coachworks, Ltd. v. Firemen's Fund Ins. Co.,

1992 U.S. Dist. LEXIS 12994, at *11 (S.D.N.Y. Aug. 31, 1992) (quoting Imperial News Co.

v. P-I-E Nationwide, Inc., 905 F.2d 641, 645 (2d Cir. 1990)).  "'Estoppel rests upon the

word or deed of one party upon which another rightfully relies and so relying changes his

position to his injury.'" Id. (quoting Nassau Trust Co. v. Montrose Concrete Products Corp.,

56 N.Y.2d 175, 184 (N.Y. 1982)).  In the context of the 60-day sworn statement

requirement in a fire insurance policy, a party asserting estoppel must show: "(1) that Defendants, by their statements or actions, led Plaintiff to believe that they would honor Plaintiff's claim even if Plaintiff did not submit the proof of loss within 60 days; (2) that Plaintiff relied on those statements or actions in not submitting the requisite proof of loss within 60 days; and (3) Plaintiff's reliance was justifiable." Id. at *12. "Estoppel . . . requires a showing of prejudice to the ensured." Burt Rigid, 302 F.3d at 95.

In any case, when a party "repeatedly and expressly reserve[s] its rights in its communications" with the other party, "[s]uch reservations preclude arguments both as to waiver and as to equitable estoppel." Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir.2006). As such, "[w]hen an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred." Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP, 277 F.Supp.2d 245, 254 (S.D.N.Y. 2003).

The parties' briefing provides a series of communications between the parties by letter and email regrading the requirement that Stephanie Converse provide a sworn statement of proof of loss. On December 11, 2019, Loarca, the State Farm Claims Specialist, wrote Stephanie Converse regarding the December 9, 2019 fire. See Exh. 5 to Declaration of Julia Loarca, dkt. # 38-21. Loarca informed Converse that the letter contained "a blank Sworn Statement in Proof of Loss form for your use in submitting your claim." Id. Loarca explained that "[b]y accurately completing this form you will help expedite the processing of your claim." Id. Loarca added that "[t]he completed Sworn Statement of Proof of Loss form should be mailed to us in the enclosed business reply

21

envelope.  This information is due by 2/17/2020."  Id.[4]

On January 2, 2020, Roy A. Mura, State Farm's counsel, wrote Stephanie Converse about the status of her claim and the documents necessary for Defendant to process it.  See Exh. 6 to Loarca Declaration, dt. # 38-22.  Mura acknowledged that Converse had filed a claim, but informed her that "[f]urther investigation is necessary for State Farm to reach a decision as respects your cliam.  The subject insurance policy provides that, in the event of a loss, State Farm may require you to answer questions under oath and produce certain records and information."  Id.  Counsel "requested [Converese] to attend an examination under oath and to produce the documents and records listed below."  Id.  "Mura warned that "[a]n unexcused failure to attend the exmination under oath as scheduled or produce the items requested may result in the loss of your rights under the insurance policy."  Id.  The letter describes Converse's obligations under the policy, including the requirement that she "submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief" a number of items concerning the property and the personal property loss, as well any additional living expenses as a result of the fire.  Id. (emphasis in original quotation).  The letter also stated that State Farm had previously informed Converse that State Farm sought to conduct an examination under oath.  Id.

Converse had not responded to an email on December 31, 2019 and a voice message on January 2, 2020.  Id.  Mura thus scheduled an examination under oath for January 9, 2020 and requested that Converse bring with her a number of documents

---

[4]The mailing contains a blank copy of this Sworn Statement in Proof of Loss form. See dkt. # 38-21.

related to the property and her loss.  Id.  Included in this request for documents as was a

request that she bring "[t]he original, completed and executed 'Authorization', 'Sworn

Statement in Proof of Loss,' and 'Personal Property Inventory Customer Worksheet form

that Julio Loarca of State Farm sent you on December 11, 2019."  Id.  Counsel further

informed Converse that "[i]f you are unable to provide these completed and executed

forms by next Thursday, January 9, 2020, State Farm reserves it rights to continue your

examination under oath at another session after you have submitted them."  Mura's letter

also contained the following statement:

> Please be advised that a failure to attend your examination under oath or to
> produce the information and documents requested in this letter or to timely
> complete and return the Sworn Statement in Proof of Loss form for the reported
> loss may result in the loss of your rights under the above-numbered insurance
> policy.  Please be further advised that State Farm Fire and Casualty Company
> specifically reserves all rights and defenses which it may have at law or under the
> terms of the policy.  By scheduling and/or proceeding with your examination under
> oath and/or by requesting that you produce other documents and records to
> substantiate your claim, State Farm does not waive any other policy conditions or
> obligations of yours.

Id.

Emails between Stephanie Converse, Plaintiffs' counsel, and Mura contain further

information on efforts to procure the sworn statement and State Farm's assertion of its

rights under the insurance contract.  On December 31, 2019, Mura emailed Stephanie

Converse in an effort to schedule an examination under oath.  See Exh. 1 to Plaintiffs'

Response to Defendant's motion, dkt. # 44-1.  Recognizing that Converse hoped to do the

examination in Florida, where she resided, Mura suggested dates in early January.  Id.

Eric Swartz, Stephanie Converse's attorney, responded on January 7, 2020, explaining

that Converse could not attend the "EUO at this time on my advice."  Id.  Swartz explained

23

that "[t]here is an arson investigation into the fire in Jefferson County by the City Police Department.  She is of course innocent of any wrongdoing, but until the investigation runs it course I must reserve her rights to participate in the EUO."  Id.  On February 5, 2020, Mura emailed Swartz to reschedule the examination.  He suggested several dates in February.  Id.  Mura emailed Swartz again on February 7, 2020 to ask him to respond to his proposed dates.  Id.  Swartz responded on February 10, stating "I will get back to you as soon as I can talk to Ms. Converse.  Let's tentatively plan on the 18th."  Emails continued over the next two days, as Swartz attempted to contact Stephanie Converse. Id.  Finally, Mura again emailed Swartz.  Id.  On February 20, 2020, Mura wrote that he had not heard from Swartz after an email that Mura received on February 12.  Id.  As a result, the proposed February 18, 2020 examination did not occur.  Id.  Mura reminded Swartz that "State Farm is entitled to conduct a timely investigation of the fire and your client is requited to cooperate in that investigation by, among other things, producing the documents and records requested by my January 2, 2020 letter to her (copy attached) and attending an EUO."  Id.  Even in light of the police investigation, "Ms. Converse has had more than enough time to compile and produce the requested materials.  Please have her do so now."  Id.  Mura planned to be in Florida from March 13 to 24.  Id.  If Swartz did not provide a date by February 24, Mura would chose a date for the examination and "expect Ms. Converse to attend."  Id.  He warned Swartz that "[i]f Ms. Converse does not attend her EUO on that rescheduled date, State Farm reserves the right to deny her claim based on non-compliance with policy conditions."  Id.  Eventually, the parties settled on March

13, 2020 to conduct the EUO.  Id.[5]

On February 27, 2020, Mura emailed Swartz's assistant to confirm the time and place of the examination.  Id.  He also provided a "[r]eminder that I need as many of the requested documents (see attached) that Ms. Converse has put together.  Please have Ms. Converse send those to me right away."  Id.  The email contained a reservation of rights that directly addressed Stephanie Converse's obligation timely to provide a sworn statement:

> State Farm Fire and Casualty Company continues to reserve all rights and defenses which it may have at law or under the terms of the policy.  By rescheduling and/or proceeding with Ms. Converse's examination under oath and/or by requesting that she produce documents and records to substantiate her claim, State Farm does not waive any other policy conditions or obligations of hers, including those relating to her obligation to submit timely signed, sworn proof of loss.  It is my understanding that Ms. Converse received State Farm's December 11, 2019 letter requesting, among other things, a sworn proof of loss on December 17, 2019, making her executed sworn proof of loss due to be sent to State Farm by no later than February 17, 2020.  State Farm still wishes to receive the requested documents and examine Ms. Converse under oath, but it reserves its rights to deny coverage to her if she did not send her sworn proof of loss back to State Farm by February 17, 2020.

Id.

The record thus makes clear that State Farm repeatedly and clearly reserved its right to deny coverage based on Stephanie Converse's failure to provide a sworn statement by February 17, 2020.  Since "[w]hen an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred" the Court cannot find that Defendant waived the requirement or is estopped from asserting that defense.  Steadfast Ins. Co.,

---

[5]A bit more back-and-forth occurred over whether Converse could be subjected to an examination if she was the subject of a police investigation, but the examination eventually went forward on March 13, 2020.

277 F.Supp.2d at 254.  Since failure to timely file the sworn statement is a complete

defense to a breach-of-contract claim, the Court will grant the motion in this respect as

well.

### IV.   Richard Converse's Claim

Defendant seeks summary judgment on Richard Converse's claims.  Defendant

contends that any interest he has in the property has been satisfied, and he therefore has

no insurable interest upon which he could base a breach-of-contract claim.

"It has long been the rule that, in order to prevent fraud and crime and to prohibit

wagering contracts on property in which the insured possesses no interest, the lack of an

insurable interest in the property insured renders the property insurance void and

unenforceable."  Etterle v. Excelsior Ins. Co., 74 A.D.2d 436, 438 (4th Dept. 1980).  "Under

the Insurance Law, the term 'insurable interest' is defined to include 'any lawful and

substantial economic interest in the safety or preservation of property from loss,

destruction, or pecuniary damage.'"  Sabharwal v. Hyundai Mar. & Fire Ins. Co., Ltd., No.

2020-06357, 2023 N.Y. App. Div. LEXIS 2737, at *4 (2d Dept. May 17, 2023) (citing N.Y.

Insurance Law § 3401.  An insurable interest exists "'where he [or she] has such a

relation or connection with, or concern in, such subject matter that he [or she] will derive

pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or

damage from its destruction, termination, or injury by the happening of the even insured

against.'"  Id. (quoting Azzato v. Allstate ins. Co., 99 AD3d 643, 649 (2d Dept. 2012)).

"'Mere possession or license to use the property is insufficient to support an insurable

interest where the insured would experience no direct economic loss by its destruction.'"

Debagio v. Metro. Cas. Ins. Co., No. 14cv161, 2017 U.S. Dist. LEXIS 237102 at *9

(N.D.N.Y Mar. 31, 2017) (quoting <u>Azzato</u>, 951 N.Y.S.2d 630 (N.Y. 1972)).  A party need not have "'[a] legal or equitable interest in the property'" to have an insurable interest.  <u>Id.</u> (quoting <u>Weissman v. Galway Constr. Corp.</u>, 239 A.D.2d 410, 411 (2d Dept. 1997)).  An insurable interest exists "'whenever'" a person "'would profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction.'" <u>Id.</u> at *5 (quoting <u>Azzato</u>, 99 A.D.3d at 649)).

"The existence of an insurable interest, however, is not of itself sufficient to confer benefits under a policy extending coverage for property damage." <u>Stainless, Inc. v. Employers Fire Ins. Co.</u>, 69 A.D.2d 27, 31 (1ˢᵗ Dept. 1979).  The policy terms define "who is covered and the extent of the coverage." <u>Id.</u>  "Recognition of an insurable interest establishes only the existence of a legally recognizable interest which may be protected by insurance coverage." <u>Id.</u>  Because "the policy is drawn by the insurer," however, "it is to be liberally construed in favor of the insured." <u>Id.</u> at 33.  "This principle requires that any ambiguity be construed against the insurer, since it is the insurance company which has the responsibility of making its intention clearly known." <u>Id.</u>

In this case, Richard Converse appeared for a deposition on July 13, 2022.  Defendant's Statement at ¶ 34.  Richard Converse testified that he had not contributed anything financially towards the purchase of the property in question.  <u>Id.</u> at ¶35.  Prior to the date of the fire at issue, Richard Converse had not stored any personal belongings at the property.  <u>Id.</u> at ¶ 36.  When he and his sister purchased the property in 2012, they agreed that Stephanie Converse would "be primarily responsible for paying the mortgage." <u>Id.</u>  He further testified that Stephanie Converse "was managing the–the [property].  She was living–initially, she was living in one part, and the tenant was living in the other.  So

27

yes.  She was collecting rent from the tenant and paying the mortgage."  Id. at ¶ 37.

Stephanie Converse paid the mortgage "out of funds that she had, and not out of [Richard

Converse's] funds."  Id. at ¶ 38.  When they purchased the property, Richard and

Stephanie Converse had an understanding that Stephanie "was responsible for–for renting

out the–the other side . . . She was living in one side and renting out the other."  Id. at ¶

39.  She also collected the rent.  Id. at ¶ 40.  Richard and Stephanie Converse did not

have any joint accounts between the time they purchased the property and the fire.  Id. at

¶ 41.  Richard Converse never received any of the rental income the property generated.

Id. at ¶¶ 42-43.  Mortgage escrow funds paid for both taxes and insurance on the property.

Id. at ¶¶ 44-46.  Richard Converse never paid separately for insurance or taxes on the

property.  Id. at ¶ 46. Richard Converse never claimed any rental income on his tax

returns.  Id. at ¶ 47.  Richard Converse was one of the deeded owners of the property on

December 8, 2019.  Id. at ¶ 48.  He testified, however, that after the fire, when "the

mortgage was paid off, my sister did a quick [sic] claim deed to transfer the property into

her real estate company."  Id. at ¶ 49.

Richard Converse also produced a declaration in opposition to the summary

judgment motion.  See Richard Converse Declaration ("Converse Dec."), dkt. # 44-7.

Converse states that, at the time of the fire, "neither my sister nor I resided in the Property,

but it was rented to tenants."  Id. at ¶ 4.  He was an "'additional insured' party" on the

insurance policy in question.  Id. at ¶ 5.  Richard Converse received a letter from State

Farm dated October 7, 2020 "acknowledging and accepting any claims covered by the

policy for any insurable interest in the Property."  Id. at ¶ 6.  He has not received any

payment from Defendant, even though he has complied with information requests from

defendant and "identif[ied] the specific items of loss from the fire."  Id. at ¶ 7.  While he

and his sister had agreed at the time of purchase that Stephanie Converse "would act as

property manager because she had the time and experience necessary to run a

successful rental investment property," Richard Converse "agreed to apply with her for the

purchase money mortgage because [he] had good credit and saw an opportunity to make a

profit by contributing my credit to this purchase."  Id. at ¶ 10.  He agreed to become liable

for the mortgage "because [he] expected for the rents on the property to generate income

to meet all necessary expenses and pay down the principal balance over time on the

Note."  Id.  The two agreed to split the equity on the property, even while Stephanie

Converse "would keep any profits generated from the rental income as compensation for

her efforts as the property manager."  Id. at ¶ 11.  Richard Converse claims that, "[s]ince

Stephanie is not managing any tenants after the fire, I am entitled to my equal share of the

lost rents, which are a covered loss under the policy."  Id.

     The insurance policy provides that:

1.    **Insurable Interest and Limit of Liability**.  Even if more than one person
has an insurable interest in the property covered, we will not be liable:
    a.    to the *insured* for an amount greater than the *insured's* interest; or
    b.    for more than the applicable limit of liability.

Insurance Policy, dkt. # 38-17, at 22 (emphasis in original).  In a case like this, where the

policy states that "'[i]n the event of a covered loss, [the defendant] [would] not pay for

more than an insured person's insurable interest in the property covered,' . . . the

insurable interest provision of the policy plainly limits the insured's recovery to the extent

of that person's insurable interest."  Azzato v. Allstate Ins. Co., 99 A.D.3d 643, 648 (2d

Dept. 2012).  Moreover, "'[a]n insurer undertakes a separate and distinct obligation to the

various insured parties', and the insurable interest of each insured is treated as separate and distinct from the other insured parties' insurable interests." Id. at 649 (quoting BMW Fin. Servs. v. Hassan, 273 A.D.2d 428, 429 (NY 2000)).  Courts apply this rule to spouses, "and one spouse's contractual right under an insurance policy will be treated as distinct form the other spouse's rights under the policy."  Id. at 649-50.

In this case, the uncontroverted evidence establishes that Richard Converse did not invest any money in the purchase of the property.  He did not make any payments to satisfy the mortgage.  While Richard Converse was liable on the mortgage on the property, he admits that the mortgage is satisfied and he is no longer obligated on that note.  Richard Converse further admits that he did not receive any income from the property and did not expect to do so.  His sister received any income from rentals. Richard and Stephanie Converse had apparently agreed that Richard would receive a portion of any equity in the property at the time of sale.

Under these circumstances, the Court finds that no reasonable juror could conclude that Richard Converse had an insurable interest that was not satisfied by the Defendant. Richard Converse did not lose any rental income from the fire.  His obligation on the mortgage has been satisfied.  His only loss is a speculative one–the potential profit he hoped to realize from the equity in the home upon sale–and this potential profit is not an insurable interest.  See, e.g., Matter of Progressive Specialty Ins. Co. v. New York Cent. Mut. Ins. Co., 2012 N.Y. Misc. LEXIS 6689 at *7 (Sup. Ct. Orange Cty, Mar. 22, 2012) ("The problem addressed by the concept of an 'insurable interest' is whether an insured, having no real economic interest in the subject matter, is actually making a wagering contract.") (citing Scarola v. Insurance Co. of North America, 31 N.Y2d 411, 292 N.E.2d

776, 340 N.Y.S.2d 630 (1972)).   As such, Defendant satisfied its contractual obligation to Richard Converse, and the Court will grant the motion in this respect as well.

### B.    Plaintiffs' Motion

Plaintiff's motion seeks summary judgement on certain of the affirmative defenses raised in this matter.  Since the Court has determined that Defendant is entitled to summary judgment on Plaintiff's claims, the Plaintiffs' motion is moot and the Court will deny it.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, dkt. # 38, is hereby **GRANTED**.  Plaintiffs' motion for summary judgment, dkt. # 39, is hereby **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

**Dated:** July 12, 2023

31